620 S.E.2d 323

**In the Matter of James Ira RUFF, Respondent.**

**No. 26044.**

Supreme Court of South Carolina.

Submitted Aug. 24, 2005.

Decided Sept. 26, 2005.

Henry B. Richardson, Jr., Disciplinary Counsel, and Joseph P. Turner, Jr., Assistant Disciplinary Counsel, both of Columbia, for Office of Disciplinary Counsel.

James Ira Ruff, pro se, of Leesville.

PER CURIAM:

In this attorney disciplinary matter, respondent and the Office of Disciplinary Counsel (ODC) have entered into an Agreement for Discipline by Consent pursuant to Rule 21, RLDE, Rule 413, SCACR. In the agreement, respondent admits misconduct and consents to the imposition of any sanction provided by Rule 7, RLDE, Rule 413, SCACR. We accept the agreement and indefinitely suspend respondent from the practice of law in this state. The facts, as set forth in the agreement, are as follows.

## *FACTS*

### *Client A*

By letter dated January 31, 2005, ODC notified respondent of a complaint submitted by Client A and requested a response within fifteen (15) days. Respondent did not respond.

On February 24, 2005, ODC sent respondent a letter pursuant to *In the Matter of Treacy*, 277 S.C. 514, 290 S.E.2d 240 (1982), and again requested a response. Respondent failed to respond to this letter. Respondent did not respond to ODC until after he was contacted by ODC's Chief of Investigations.

An Investigative Panel authorized a full investigation on March 18, 2005. Respondent received a Notice of Full Investigation on March 22, 2005. Respondent failed to respond to the Notice of Full Investigation within thirty (30) days. Respondent submitted he did not believe he was required to respond to the Notice of Full Investigation as he had responded to the Chief of Investigation's prior inquiry.[1]

---

1. It was determined respondent did not commit misconduct in his representation of Client A.

*Client B*

While investigating Client A's complaint, ODC received a complaint against respondent from Client B. Client B complained respondent failed to pay taxes of $1,149.89 due to the South Carolina Department of Revenue relating to a real estate transaction on October 16, 2003. Payment of the taxes was to be made from the net proceeds of the real estate transaction. Respondent's failure to pay the taxes caused financial harm to Client B.

The original check payable to the tax authority, dated October 16, 2003, was located in Client B's file. Respondent expressed his desire to immediately make restitution to Client B. Respondent sent an apology to Client B on May 27, 2005 and, on June 10, 2005, he sent Client B a certified check as full reimbursement.

*Client C*

During interviews with ODC, respondent acknowledged another client matter wherein a real estate closing occurred, but respondent failed to pay a tax authority. In this matter, respondent closed a real estate transaction for Client C on June 12, 2001, but failed to pay taxes of $2,240.00 to the South Carolina Department of Revenue. The taxes were to be paid from the proceeds of the real estate transaction. Respondent paid the outstanding taxes, plus interest, in June 2005.

*Trust Account Matters*

ODC requested respondent provide his law firm's financial records from 2000 through 2005. During this period of time, respondent maintained two trust accounts. Respondent admits he failed to comply with most requirements of the recordkeeping provisions of Rule 417, SCACR, since the rule's adoption on January 1, 1997. In particular, since 1997, respondent failed to reconcile the two trust accounts and failed to identify the majority of client funds deposited into the two trust accounts by failing to place a client name or file number on the deposit tickets. Respondent admits that, from 1997 to

the present, he was unable to identify the clients whose monies were in his trust accounts or identify a client's existing fund balance at any given time.[2]

Respondent admits he did not maintain client ledger sheets for non-real estate matters, but did maintain some form of disbursement sheet in the client file that may or may not have contained all information required by Rule 417, SCACR.

Respondent admits that for several years banks imposed monthly administrative fees and/or analysis fees against his two trust accounts. He admits he did not deposit funds in the trust accounts to cover these charges and the fees were paid out of client funds.

Respondent admits that there recently existed a client fund shortage of approximately $8,000.00. Respondent represents that, in June 2005, he deposited $6,000.00 of his personal funds into the trust accounts in an attempt to cover this shortage.

*Misappropriation Matter*

Respondent admits that, since his admission in 1975, he has misappropriated and converted between $12,000.00 and $15,000.00 of clients' funds from his trust accounts to his own personal use. Respondent has not repaid these funds.[3] Respondent has not maintained any list, register, or log to accurately identify the clients to whom the funds belonged or

---

**2.** Respondent's bookkeeping procedure consisted of removing the bank deposit slip relative to a client matter from the deposit book and placing the slip in the client's file. Based on this practice, ODC was unable to identify any deposit or trace client funds from 2000 through 2005. Respondent admits the only way to identify a trust account deposit was by retrieving the deposit slips from client files and comparing the deposit slips against the monthly bank statements.

Respondent produced bank deposit receipts for the two trust accounts. The receipts were not identified in any manner as to client name or file number. Respondent admits the only way to trace a client's funds using the bank receipt would be by obtaining the copy of the deposit ticket from the client's file and comparing that document against the monthly bank statements and bank receipts.

**3.** As stated above, respondent represents he deposited $6,000.00 of his own funds into his trust accounts in an attempt to cover any shortages.

the amounts he converted. Respondent voluntarily disclosed this information to ODC.

### Commingling Matters

In 2004, respondent sold his own real property and deposited $9,433.24 into his trust account. Thereafter, respondent disbursed most, if not all, of these proceeds from his trust account using trust account checks. Respondent acknowledges he commingled his personal funds with client funds.

Respondent and a family member developed a small, informal business involved in a real estate venture. From 2001 until the venture dissolved, respondent used his law firm trust accounts as an "escrow account" for this venture. In doing so, respondent deposited non-client funds into the accounts and disbursed funds to non-client payees by use of trust account checks.[4] Respondent admits that this use of his trust accounts constitutes commingling.

## LAW

Respondent admits that by his misconduct he has violated the following provisions of the Rules of Professional Conduct, Rule 407, SCACR: Rule 1.1 (lawyer shall provide competent representation); Rule 1.3 (lawyer shall act with reasonable diligence and promptness in representing clients); Rule 1.15 (lawyer shall promptly deliver to client any funds or other property to which client is entitled); Rule 8.1(b) (lawyer shall not knowingly fail to respond to lawful demand for information from a disciplinary authority); Rule 8.4(a) (lawyer shall not violate Rules of Professional Conduct); Rule 8.4(d) (it is professional misconduct for lawyer to engage in conduct involving dishonesty, fraud, deceit, or misrepresentation); Rule 8.4(e) (lawyer shall not engage in conduct that is prejudicial to administration of justice). In addition, respondent admits his misconduct constitutes a violation of Rule 7, RLDE, of Rule 413, SCACR, specifically Rule 7(a)(1) (lawyer shall not violate

---

4. In particular, respondent issued checks from the trust accounts for monthly obligations, annual taxes, insurance, and repairs related to real property owned by the business venture.

Rules of Professional Conduct or any other rules of this jurisdiction regarding professional conduct of lawyers), Rule 7(a)(3) (it shall be ground for discipline to knowingly fail to respond to lawful demand from a disciplinary authority), Rule 7(a)(5) (lawyer shall not engage in conduct tending to pollute the administration of justice or to bring the courts or the legal profession into disrepute or conduct demonstrating an unfitness to practice law), and Rule 7(a)(6) (lawyer shall not violate the oath of office taken upon admission to practice law in this state). Finally, respondent admits he has violated the record-keeping provisions of Rule 417, SCACR.

## CONCLUSION

We accept the Agreement for Discipline by Consent and indefinitely suspend respondent from the practice of law. Respondent shall make full restitution to any clients, persons, or entities owed any money as a result of his misconduct within one year from the date of this opinion. Within fifteen days of the date of this opinion, respondent shall surrender his certificate of admission to practice law in this state to the Clerk of Court and shall file an affidavit with the Clerk of Court showing that he has complied with Rule 30, RLDE, Rule 413, SCACR.[5]

**INDEFINITE SUSPENSION.**

TOAL, C.J., MOORE, WALLER, BURNETT and PLEICONES, JJ., concur.

---

5. The parties agreed to the appointment of an attorney to protect respondent's clients' interests if the Court suspended respondent for more than sixty (60) days. By separate order, the Court will appoint an attorney to protect respondent's clients' interests.