## NANCY BURTON *v.* STATEWIDE GRIEVANCE COMMITTEE*

Superior Court, Judicial District of New Britain
File No. CV00-0505715

Memorandum filed April 24, 2002

*Nancy Burton*, pro se, the plaintiff.

* Affirmed. *Burton* v. *Statewide Grievance Committee*, 79 Conn. App. 364, 829 A.2d 927 (2003).

*Elizabeth F. Collins*, assistant bar counsel, for the defendant.

QUINN, J. The plaintiff, attorney Nancy Burton, appeals from the decision of the defendant, the statewide grievance committee (grievance committee), reprimanding her for violating rule 8.2 (a) of the Rules of Professional Conduct. The rule provides that "[a] lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge, an adjudicatory officer or public legal officer, or of a candidate for election or appointment to judicial or legal office." For the reasons stated herein, the court dismisses the appeal.

I

## BACKGROUND OF THE CASE

The first chapter of this lengthy dispute is detailed in *Burton* v. *Statewide Grievance Committee*, 60 Conn. App. 698, 760 A.2d 1027 (2000). In December, 1995, the plaintiff wrote to the chief justice of our Supreme Court, requesting an investigation of Judge Howard J. Moraghan, Judge Socrates H. Mihalakos and Judge Edward F. Stodolink for various types of allegedly corrupt practices. On the basis of the allegations in the plaintiff's letter, Judges Moraghan and Mihalakos referred the matter to the grievance committee. At the hearing on the grievance before a reviewing committee of the grievance committee, Judges Moraghan and Mihalakos testified under oath. As a result of the hearing, the grievance committee reprimanded the plaintiff for having violated rule 8.2 (a). The Superior Court dismissed the plaintiff's administrative appeal, but the Appellate Court reversed that decision on the ground that the grievance committee improperly had conducted the disciplinary hearing

in the plaintiff's absence. *Burton* v. *Statewide Grievance Committee*, supra, 707.

In the meantime, the plaintiff initiated a second round of proceedings. The plaintiff sent another letter to the justices of the Supreme Court in September, 1997, this time alleging that Judges Moraghan and Mihalakos had "testif[ied] falsely against [her] under oath" at the first grievance hearing. Contemporaneously, the plaintiff provided a copy of the letter to the Danbury News-Times, which newspaper ran an article quoting the same accusation of false testimony. The plaintiff's letter to the Supreme Court and the newspaper article form the basis of the second and present grievance against the plaintiff, based on a referral to the grievance committee by Judge Moraghan.

The reviewing committee of the grievance committee conducted hearings on the present grievance over six days between August, 1998, and August, 1999. The reviewing committee issued a proposed decision on July 28, 2000. Two members of the reviewing committee recommended that the plaintiff be reprimanded for having violated rule 8.2 (a) in making the September, 1997 statements. The third member of the reviewing committee recommended that the plaintiff be presented to the Superior Court for disciplinary action. On September 22, 2000, the grievance committee affirmed the proposed decision of the majority of the reviewing committee and reprimanded the plaintiff. This appeal followed.

II

DISCUSSION

A

Standard

Judicial review of decisions of the grievance committee proceeds according to general standards for administrative appeals. The court's role is limited in reviewing

a decision of the grievance committee to reprimand an attorney.

Our courts have stated: "[I]n reviewing a decision of the statewide grievance committee to issue a reprimand, neither the trial court nor this court takes on the function of a fact finder. Rather, our role is limited to reviewing the record to determine if the facts as found are supported by the evidence contained within the record and whether the conclusions that follow are legally and logically correct." (Internal quotation marks omitted.) *Somers* v. *Statewide Grievance Committee*, 245 Conn. 277, 290, 715 A.2d 712 (1998); see also Practice Book § 2-38 (f).

The grievance committee must prove the case by a clear and convincing standard of proof. "[C]lear and convincing proof denotes a degree of belief that lies between the belief that is required to find the truth or existence of the [fact in issue] in an ordinary civil action and the belief that is required to find guilt in a criminal prosecution. . . . [The burden] is sustained if evidence induces in the mind of the trier a reasonable belief that the facts asserted are highly probably true, that the probability that they are true or exist is substantially greater than the probability that they are false or do not exist." (Internal quotation marks omitted.) *Wildwood Associates, Ltd.* v. *Esposito*, 211 Conn. 36, 42, 557 A.2d 1241 (1989).

## B

### Plaintiff's Briefs

The plaintiff filed only a three page opening brief in this court. The apparent theme of the brief is that the reviewing committee improperly found that she intentionally or recklessly had made false statements in her letter to the Supreme Court and in the subsequent newspaper account concerning Judges Moraghan and Mihalakos. To support her claim that she had proved the

truth of her second petition to the Supreme Court, the plaintiff sets out, in summary fashion, a list of perceived errors in the reviewing committee proceedings. The plaintiff does not show when and where she raised the claims in question in the grievance proceedings, makes no citations to the testimony or to other parts of the record, provides no case law and, in general, offers no meaningful discussion of her claims.

In the grievance committee's response brief, the grievance committee argues that the plaintiff waived review of her claims by failing to raise them in the grievance proceedings and abandoned them by failing to brief them adequately. The plaintiff, thereafter, submitted a reply brief, after securing permission from the court, *Wiese, J.*, in which she sets out the testimony in question, supplies citations to the record, cites legal authorities and provides discussion of several claims of error.

It is generally improper for an appealing party to raise issues for the first time in a reply brief. *Williams Ford, Inc.* v. *Hartford Courant Co.*, 232 Conn. 559, 593 n.26, 657 A.2d 212 (1995). Although the plaintiff's opening brief does not present any issues adequately, the court will nonetheless consider in detail the issues raised in her reply brief. Given the protracted nature of the disputes and the various pending grievance matters, a failure to consider this appeal on its merits would not serve the interests of justice.

C

Evidence to Support the Reviewing
Committee's Decision

The main argument advanced in the plaintiff's reply brief[1] is that the record contains no basis for the conclusion that the plaintiff intentionally or recklessly made

---

[1] The plaintiff does raise some collateral issues concerning the process afforded her during one of the hearings relative to what she believed to be an excessive security watch. Because she did not raise the issue with the

false statements about the integrity of a judge in violation of rule 8.2 (a). To support her position that Judges Moraghan and Mihalakos testified falsely, the plaintiff focuses on four areas of testimony provided at the hearing on the first grievance.

1

The first area concerns Judge Moraghan's testimony that "anything that was unfavorable to [the plaintiff], as most were, was appealed. And she appealed a decision of mine, which she said was clearly erroneous and upheld on appeal." As the reviewing committee found, "the case at issue was the subject of a February, 1988 petition for certification to the Appellate Court by [the plaintiff], which was denied in June, 1988."

Although the plaintiff did file a petition for certification on behalf of her client rather than an appeal as of right, and Judge Moraghan acknowledged during the second grievance proceedings that he "was mistaken," through her petition, the plaintiff unsuccessfully challenged Judge Moraghan's ruling. If anything, Judge Moraghan's characterization of the petition as an appeal was overly favorable to the plaintiff, as the Appellate Court apparently did not even deem the plaintiff's appellate challenge worthy of full review.

2

The second line of testimony that the plaintiff labels false is Judge Moraghan's testimony at the first grievance hearing that the plaintiff did not provide the Supreme Court with "depth" or "substantiation" of the

panel at the time, concerning the three marshals she claims were on guard, and because there is no record on which it could be reviewed by the court, the court will not address that claim. The court notes that the record reflects that the plaintiff was able to present all of her claims and submit much documentation in the grievance proceedings. She personally attended all hearings that were scheduled and was extended many continuances so that she could do so.

claims of corruption made in her original petition to the Supreme Court. The plaintiff claims that she did provide transcripts and other materials to support her petition. It is obvious that there was a difference of opinion concerning whether the papers that the plaintiff submitted actually provided any real support to her claims. Judge Moraghan did not think so. The plaintiff's disagreement with his opinion provides no basis for an accusation that the judge's testimony was false.

The third area of inquiry focuses on the testimony of Judge Mihalakos at the first grievance hearing that he "made it a habit whenever [he] had a pretrial with [the plaintiff] to do it in open court with a stenographer present so that anything she said, [the judge] said, and he said, there would be a record of it." The plaintiff interprets that testimony to mean that the judge conducted pretrials with the plaintiff on the record "on his own motion." The plaintiff then argues that this testimony, so construed, was false because in 1994, Judge Mihalakos conducted a pretrial with the plaintiff on the record at the plaintiff's request instead of on his own motion. The record reflects, however, that Judge Mihalakos did not state that he conducted pretrials involving the plaintiff on the record "on his own motion." Whether the pretrial in 1994 took place on the record as a result of the judge's own motion or as a result of the plaintiff's request, it was still Judge Mihalakos who made the final decision to conduct the hearing on the record. The court concludes that there is nothing false in his statement that he conducted pretrials involving the plaintiff on the record.

3

The final claim focuses the plaintiff's accusation in her 1995 letter to the Supreme Court that there was a "stark appearance of judicial corruption" in that, among other things, "Judge Mihalakos refused to conduct a

pretrial conference, although assigned to do so, unless the defendant, myself, agreed to pay the plaintiffs, the friends of Judge Moraghan, a sum of money. The jury trial was aborted by a settlement. The settlement provided that I would not sue the plaintiffs, the friends of Judge Moraghan, if they withdrew their action against me. Money was not a settlement term."

In her current grievance, the plaintiff accuses Judge Mihalakos of testifying falsely when he claimed that the plaintiff's letter accused him of "trying to line Judge Moraghan's pockets by forcing her to pay to a crony of Judge Moraghan, an attorney, moneys so that he could pay Judge Moraghan a portion of this settlement." Although Judge Mihalakos did not repeat the exact language used in the plaintiff's letter, that fact alone does not make his testimony false. At a minimum, the testimony of Judge Mihalakos was a fair characterization and summary of the plaintiff's charge that he had engaged in "judicial corruption."

## D

### The Reviewing Committee's Decision

The reviewing committee, in its decision, found by clear and convincing evidence that the plaintiff had sent a copy of her letter to the Supreme Court to the Danbury News-Times on her own behalf. It held that the dissemination of the statements contained in the letter were also due to her actions. The reviewing committee found "the questioned testimony reflected various aspects of opinion, paraphrasing, semantics, recall and personal knowledge" and that the testimony "did not reflect any deceitful conduct." It concluded "the charge of false testimony under oath, given the facts of the . . . testimony of the judges, was a statement by the [plaintiff] done with reckless disregard for the truth or the falsity of the statement. The [plaintiff] also placed the statement in the press, a forum where the judges could

not readily defend themselves and where harm to the integrity of the judges and the judicial system was great. . . . The [plaintiff] had no reasonable basis to support her assertions. . . . Her statement was an assertion of a false statement of fact, namely, that the judges testified falsely under oath." This court finds that the reviewing committee's conclusion, based on the evidence before it, was neither clearly erroneous, arbitrary, capricious, nor an abuse of the discretion vested in it.

The plaintiff can refer to no objective, material fact that the judges deliberately misstated. Indeed, the plaintiff's charge that judges testified falsely against her under oath amounts to puerile quibbling over phraseology. To charge that a judge has testified falsely under oath because the judge testified that the plaintiff had unsuccessfully appealed, when in fact the plaintiff's petition for certification was denied, is to engage in word games unbecoming of a member of the bar. While this one example of unsubstantiated accusations against a judge would be sufficient in itself to justify professional discipline of the plaintiff, none of her four claims of false testimony has any merit. The second claim concerning her difference of opinion with Judge Moraghan about the documentation "in support" of her letter is another such example. The claims concerning whether Judge Mihalakos conducted pretrials with the plaintiff on the record on his own motion or her motion is similarly puerile. The last claim concerning Judge Mihalakos' characterization of her statements concerning him is another such claim. The court finds from the record and a review of those claims, that there was clear and convincing evidence supporting the reviewing committee's decision to sanction the plaintiff.

E

First Amendment Claims

The plaintiff's actions also are not protected by her claimed first amendment right of free speech.

Although a lawyer does not surrender her freedom of expression upon admission to the bar, once admitted, a lawyer must temper her criticisms in accordance with professional standards of conduct. *United States District Court for the Eastern District of Washington* v. *Sandlin*, 12 F.3d 861, 866 (9th Cir. 1993). As the reviewing committee correctly stated in its decision: "In cases involving violations of rule 8.2 (a), there is a balancing of an attorney's right of free speech and the state's interest in preserving the integrity of the judicial system." In any event, "[f]alse statements, made with reckless disregard of the truth, do not enjoy constitutional protection." (Internal quotation marks omitted). *Matter of Palmisano*, 70 F.3d 483, 487 (7th Cir. 1995), cert. denied, 517 U.S. 1223, 116 S. Ct. 1854, 134 L. Ed. 2d 954 (1996).

### III

### CONCLUSION

Charges leveled by attorneys against judges ought to be made with the utmost caution, not because judges are above the law, but because such charges affect public perception of the judicial system. The commentary to rule 8.2 (a) provides in relevant part: "Expressing honest and candid opinions on [the integrity of a judge] contributes to improving the administration of justice. Conversely, false statements by a lawyer can unfairly undermine public confidence in the administration of justice." The reviewing committee reasonably concluded that instead of acting with the necessary caution, the plaintiff brought charges against judges with reckless abandon, thereby undermining public confidence in the administration of justice.

For all the foregoing reasons, the appeal is dismissed.