595 S.E.2d 243

**In the Matter of Daniel F. NORFLEET, Respondent.**

No. 25803.

Supreme Court of South Carolina.

Heard Jan. 8, 2004.

Decided April 12, 2004.

Attorney general Henry Dargan McMaster and Senior Assistant Attorney General James G. Bogle, Jr., both of Columbia, for the Office of Disciplinary Counsel.

Daniel F. Norfleet, of Summerville, pro se.

40

**PER CURIAM:**

In this attorney disciplinary matter, formal charges were filed against Respondent four times between December 12, 2000 and June 13, 2001. On March 26, 2002, a hearing was held to address the various charges. The full panel of the Commission on Lawyer Conduct ("Commission") adopted the sub-panel's report, and recommended Daniel F. Norfleet ("Respondent") be suspended from the practice of law for a period of two years, with conditions. The Commission recommended Respondent be required to undergo instruction in law office management, with a particular emphasis on trust account management, along with counseling in civility and appropriate conduct toward clients and others. The Commission also recommended that Respondent be required to make restitution to Wayne Howard in the amount of $8,381.52 and to pay the costs of the Commission's proceedings, in the amount of $2,164.37. We find the gravity of Respondent's misconduct justifies harsher sanctions. Therefore, we hereby impose an indefinite suspension, with conditions, effective as of the date of this opinion.

## First Formal Charges

### The Byron Matter (Charlotte Riley Complaint)

The Commission found Respondent made false statements, commingled funds, and mismanaged his trust account in connection with this matter.

Respondent was the closing attorney in a real estate transaction for Patrick Byron in February 2002. As a result of the closing, two loans with Carolina First Bank were to be satisfied. Respondent's first check, issued from his trust account satisfied the first mortgage. The second check, made payable to Carolina First Bank in the amount of $8,739.77, for satisfaction of the second mortgage, was returned for non-sufficient funds.[1] The second check was used to purchase two certified

---

1. The second trust account check was issued from the trust account of Wyckoff and Norfleet. Testimony at the hearing revealed Respondent was still operating the trust account, which had been held jointly by Respondent and his former law partner, Pete Wyckoff. The firm had been dissolved in 1995. Unknown to Mr. Wyckoff, Respondent had

checks from Carolina First Bank in the amounts of $8,731.44 and $8.33.

Respondent's wife, who was serving as his bookkeeper, secretary, and office manager testified she used the second trust account check to purchase the two cashiers checks and was aware that the account may not have had sufficient funds to cover the trust account check. She testified she concealed her actions from her husband. The Commission found the requirements of Rule 417, SCACR, regarding use, balancing, and maintenance of a trust account were incumbent on Respondent, not his wife.

During this same time period, Respondent represented Wayne Howard in a Workers Compensation case. The case settled and the attorney for the defendant's insurance carrier mailed Respondent a letter enclosing a draft payable jointly to Mr. Howard and Respondent in the amount of $8,381.51. The letter accompanying the draft instructed Respondent not to negotiate the insurance company's draft until he had completed and mailed to opposing counsel the Final Lump Sum Agreement and Release, with the endorsement of the Workers Compensation Commission. Respondent did not follow the instructions in the letter. The draft, drawn on the account of Huron Insurance Company, was endorsed by Respondent's wife and deposited in Respondent's trust account. With this deposit, sufficient funds were on deposit in Respondent's trust account to purchase another check, payable to Carolina First Bank in the amount of $8,739.77, which was used to pay off the Byron's second mortgage.

The Commission found Respondent made a false statement to Wayne Howard in a letter dated August 4, 2000, in which he stated the settlement check he had received was stale and must be reissued. The Commission concluded Respondent misrepresented to his client Respondent's receipt of the settlement check.

*Vaughan Realty Matter*

The Commission found Respondent commingled funds.

---

continued to operate the trust account under the name of Wyckoff and Norfleet.

On January 7, 2000, Respondent closed a real estate transaction between Vaughan Homes and Rebecca Moore. Respondent issued a trust account check for $2,378.25, dated January 7, 2000, payable to Vaughan Realty, Inc., as commission. The check was returned for non-sufficient funds.

Matthew Neylon, an official with Vaughan Homes, Inc., telephoned Respondent's office several times. Neylon received a cashier's check from Respondent's office in satisfaction of the commission obligation.

The Commission concluded that since the Vaughan Realty check had been returned, monies used to replace it must have come from a source other than the Vaughan/Moore real estate closing.

*Additional Trust Account Mismanagement*

In connection with the following incidents, the Commission found Respondent failed to maintain control over his trust account.

Respondent wrote a check for $950 from the Wyckoff and Norfleet trust account to pay his office rent. Additionally, the Commission received evidence showing the trust account had a negative balance in December 1999, February 2000, and March 2000. Between December 1, 1999, and March 31, 2000, Respondent had six instances of overdraft fees and seven instances of NSF fees.

*Failure to Respond to Disciplinary Charges*

Respondent failed to reply to two letters from the Commission concerning the Byron real estate transaction. Additionally, Respondent did not reply to the Commission's Notice of Full Investigation, which was returned unclaimed by the postal service following three attempts of service.

*Withholding Taxes*

The Commission found Respondent failed to withhold from his employees certain taxes on behalf of the State of South Carolina, thereby breaching his fiduciary duty owed to the State of South Carolina. The Commission received into evidence a series of South Carolina Department of Revenue Warrants for Distraint filed against Respondent. Additionally, Respondent has not filed personal income tax returns since 1996.

## *Sub-panel's Findings*

The sub-panel found Respondent had committed attorney misconduct, in violation of the *Rules of Professional Conduct,* Rule 407, SCACR, and Rule 7 of Rule 413, SCACR. The sub-panel found violations of numerous provisions of Rule 407, particularly Rule 1.1 (competence); Rule 1.3 (diligence); Rule 1.15 (safekeeping property); Rule 1.5 (fees); Rule 4.1 (truthfulness in statements to others); Rule 8.1(b)(knowingly failing to respond to a lawful demand for information from a disciplinary authority); and Rule 8.4 (misconduct), subsections (a) (violating a rule of professional conduct), (c) (conduct involving moral turpitude) and (d) (conduct involving dishonesty, fraud, deceit or misrepresentation) and (e) (conduct prejudicial to the administration of justice).

From Rule 7 of Rule 413, *Rules for Lawyer Disciplinary Enforcement,* SCACR, the sub-panel found Respondent had violated Rule 7(a)(1) (violating a Rule of Professional Conduct;); Rule 7(a)(5) (conduct tending to pollute the administration of justice or bring the legal profession into disrepute or demonstrate an unfitness to practice law); Rule 7(a)(6) (violating the oath of office taken upon admission to practice in this State); and Rule 7(a)(3) (knowingly failing to respond to a demand from a disciplinary authority).

## **Second Formal Charges**

### *Leroy Ferrell Matter*

Respondent represented Leroy Ferrell in a post-conviction relief matter. Ferrell's case was dismissed. Ferrell testified that he requested Respondent appeal the order of dismissal, but Respondent failed to do so. Respondent testified he did not appeal the order because he believed it was not meritorious.

The Commission did not find clear and convincing evidence of attorney misconduct, finding "credence in Respondent's contention that he believed further appeal on Mr. Ferrell's behalf would have been fruitless."

### *Failure to Respond to Disciplinary Charges*

The Commission concluded Respondent failed to respond to a Notice of Full Investigation mailed to Respondent on or

about November 2, 2000, in connection with the Leroy Ferrell matter. The notice was returned as unclaimed by the U.S. Postal Service.

Respondent stated he was living in Florida at the time of the November 2, 2000, mailing and that he advised the Commission of his whereabouts. Although the Commission found there was evidence that Respondent failed to respond, the Commission found Respondent's contention he was living in Florida to be a mitigating factor.

### Sub-panel's Findings

The sub-panel found Respondent committed attorney misconduct, in violation of the *Rules of Professional Conduct*, Rule 407, SCACR, and Rule 7 of Rule 413, SCACR. The sub-panel concluded Respondent violated Rule 1.1 (competence), Rule 8.1(b) (failing to respond to a lawful demand for information from a disciplinary authority), and Rule 8.4, subsections (a) (violating a Rule of Professional Conduct) and (e) (conduct prejudicial to the administration of justice).

### Third Formal Charges

The Commission concluded Respondent committed two violations in connection with his representation of Jimmy Ray Stroud in litigation against Randy and Christina Read and Christina's parents Mr. and Mrs. Rickard. The litigation primarily involved visitation disputes concerning Mary Paige Stroud, a daughter born to Jimmy Ray Stroud and Christina Read during their marriage.

### Unprofessional Conduct

Mary Paige Stroud was enrolled at Hilton Head Elementary School. Gretchen Keefner, a principal at the school, testified Respondent unexpectedly came to the school and requested to view Paige's school records and visit with her. Keefner testified Respondent did not present any identification and was dressed in casual attire. Keefner further testified Respondent became verbally abusive when she refused him access to her file. Specifically, Keefner testified Respondent threatened to sue her personally and have her fired if she did not turn over the file.

When Respondent became agitated, Keefner requested the presence of her supervisor, Henry Noble. Noble testified Respondent was dressed in "beach attire" and was very angry, loud, and threatening. Noble retrieved Paige's file for Respondent's review. Noble testified Respondent became "furious" when he found documents on which Paige had signed her name as "Paige Read" instead of "Paige Stroud."

Additionally, Sheryl B. Keating, a counselor at Coastal Empire Community Health Center on Hilton Head Island, testified that during two or three conversations with Respondent, he became angry and threatening when Keating refused to provide him with confidential information relating to her counseling sessions with Paige Stroud and her mother.

Despite Respondent's denial of these allegations, the sub-panel determined that clear and convincing evidence weighed in favor of Keefner, Noble, and Keating and that the allegations regarding Respondent's conduct toward them were proven.

### Failure to Respond to Disciplinary Charges

Respondent failed to respond to a Notice of Full Investigation mailed to him on or about December 27, 2000. The Commission found as a mitigating factor that Respondent was living in Florida.

### Sub-panel's findings

The sub-panel concluded Respondent breached the *Rules of Professional Conduct,* Rule 407, SCACR. Specifically, Respondent violated Rule 1.1 (competence); Rule 4.4 (respect for the rights of third persons); Rule 8.4 (misconduct), subsections (a) (violating a rule of professional conduct), (c) (engaging in conduct involving moral turpitude), and (e) (conduct prejudicial to the administration of justice). From Rule 7 of Rule 413, *Rules for Lawyer Disciplinary Enforcement,* the sub-panel found Respondent violated Rule 7(a)(5) (conduct tending to pollute the administration of justice or bring the legal profession into disrepute or demonstrate an unfitness to practice law) and Rule 7(a)(6) (violating the oath of office taken upon admission to practice in this State).

### Fourth Formal Charges

Respondent failed to pay a court reporter $182.90 for a transcript which he ordered involving a case filed in Dorchester County Family Court. The court reporter prepared the transcript, but never mailed the transcript to Respondent after three unsuccessful attempts to procure payment from Respondent. Ultimately, another attorney took over representation of Respondent's client in the case and paid for the transcript.

### Sub-panel's findings

The sub-panel concluded Respondent breached the *Rules of Professional Conduct,* Rule 407, SCACR. Specifically, Respondent violated Rule 1.1 (competence); Rule 1.3 (diligence); Rule 1.15 (safekeeping property); Rule 1.5 (fees); Rule 4.1 (truthfulness in statements to others); Rule 8.4 (misconduct), subsections (a) (violating a rule of professional conduct), (c) (conduct involving moral turpitude), (d) (conduct involving dishonesty, fraud, deceit, or misrepresentation) and (e) (conduct prejudicial to the administration of justice). From Rule 7 of Rule 413, *Rules for Lawyer Disciplinary Enforcement,* the sub-panel found Respondent violated Rule 7(a)(5) (conduct tending to pollute the administration of justice or bring the legal profession into disrepute or demonstrate an unfitness to practice law) and Rule 7(a)(6) (violating the oath of office taken upon admission to practice in this State).

## LAW/ANALYSIS

 This Court may make its own findings of fact and conclusions of law, and is not bound by a panel's recommendation. *In re Larkin,* 336 S.C. 366, 520 S.E.2d 804 (1999). The authority to discipline attorneys and the manner in which the discipline is given rests entirely with this Court. *In re Long,* 346 S.C. 110, 551 S.E.2d 586 (2001). The sanction of indefinite suspension has been imposed by this Court in similar cases involving multiple acts of misconduct. *See e.g., In re Gaines,* 348 S.C. 208, 559 S.E.2d 577 (2002) (indefinite suspension given attorney's prior history of bad conduct and for, *inter alia,* failing to properly maintain client escrow account and failure to make timely payment to court reporters); *In re*

*Devine,* 345 S.C. 633, 550 S.E.2d 308 (2001) (indefinite suspension warranted for, *inter alia,* failing to respond to the Office of Disciplinary Counsel and misappropriation of client funds); *In re Graab,* 334 S.C. 633, 515 S.E.2d 93 (1999) (accepting Agreement for Discipline by Consent to indefinitely suspend attorney for, *inter alia,* failing to keep complete records of trust account funds, failure to provide competent representation, failure to make truthful statements to others, failure to respond to Office of Disciplinary Counsel, and failure to respect the rights of others).

■ Respondent's numerous incidences of misconduct, including his misappropriation of approximately $20,000 of trust account funds, his failure to honor his tax obligations, his repeated failure to respond to the disciplinary charges against him, and his unprofessional behavior, justify an indefinite suspension. Furthermore, we take exception to the subpanel's finding that Respondent did not commit misconduct in failing to file a notice of appeal in the Leroy Ferrell matter. Accordingly, we find a violation of the *Rules of Professional Conduct,* Rule 407, SCACR. The only appropriate course of action would have been to file an appeal on Mr. Ferrell's behalf. We hold Respondent acted incompetently in failing to file the notice of appeal in violation of Rule 1.1.

Additionally, we take note Respondent has previously received a public admonition from this Court, dated May 1, 2001. Respondent was admonished for his aggressive representation and unprofessional behavior, which caused avoidable conflicts.

## CONCLUSION

The record is unclear of the total restitution owed to Wayne Howard. Respondent shall effectuate within sixty days of the date of this opinion an agreement with Disciplinary Counsel to implement a payment plan to ensure the timely and prompt payment of restitution to Wayne Howard and to any other parties to whom monies are owed. Upon reaching the agreement, the parties shall submit the plan to this Court, indicating all monies owed and to whom. With any application for reinstatement, Respondent must provide satisfactory evidence he has complied with the payment plan and paid the costs of the Commission's proceedings in the amount of $2,164.37.

48

Additionally, Respondent must show he has received instruction in law office management, with emphasis on trust account management and received counseling in appropriate conduct towards clients and others. Within fifteen days of the date of this opinion, Respondent shall file an affidavit with the Clerk of Court showing compliance with Rule 30 of Rule 413, SCACR, and shall also surrender his Certificate of Admission to the Practice of Law to the Clerk of Court.

**INDEFINITE SUSPENSION.**

TOAL, C.J., WALLER, BURNETT, PLEICONES, JJ., and Acting Justice JAMES R. BARBER, III, concur.