707 S.E.2d 411

**In the Matter of William Gary WHITE, III, Respondent.**

**No. 26939.**

Supreme Court of South Carolina.

Heard Feb. 1, 2011.

Decided March 7, 2011.

582

Lesley Coggiola, Disciplinary Counsel, and Barbara M. Seymour, Deputy Disciplinary Counsel, both of Columbia, for Office of Disciplinary Counsel.

William Gary White, III, of Columbia, South Carolina, pro se Respondent.

PER CURIAM.

In this attorney disciplinary matter, the Commission on Lawyer Conduct ("Commission") investigated allegations of misconduct involving the Respondent, William Gary White, III, for his lack of civility and professionalism while handling a zoning dispute with the Town of Atlantic Beach ("Town"). The Office of Disciplinary Counsel ("ODC") filed formal charges against Respondent, and a Hearing Panel of the Commission recommended a definite suspension. We find Respondent has committed misconduct that warrants imposition of a definite suspension of ninety days and order Respondent to complete the Legal Ethics and Practice Program administered by the South Carolina Bar within six months of reinstatement.

## I. FACTS

In 2004, Respondent represented the Atlantic Beach Christian Methodist Episcopal Church [1] ("Church") in a legal action it filed against the Town regarding a zoning dispute. The Town Attorney was Charles Boykin. The parties settled the action in 2007. As part of the settlement, the Church's action was dismissed, the Town paid damages to the Church, and the Church promised future compliance with all of the Town's building, permitting, and zoning requirements.

---

1. It also appears in the record as the Christian Methodist Episcopal Mission Church.

On April 30, 2009, Kenneth McIver, the new Town Manager, sent a notice about the need for zoning compliance to the owners of the Church property, Vonetta M. Nimocks and Eboni A. McClary ("Church's Landlords"). In his notice, McIver stated that as part of the prior settlement, "the judge ordered that the Church must comply with the Town's Zoning Ordinances and that a request for compliance must come from you, the owner[s]." McIver copied the notice to the Church's pastor, who gave it to Respondent.

On May 6, 2009, Respondent sent a letter about McIver's notice to the Church's Landlords. Respondent sent copies of his letter to McIver and Boykin. The remarks made by Respondent in his May 6th letter are the subject of this disciplinary proceeding. The letter reads in full as follows:

You have been sent a letter by purported Town Manager Kenneth McIver. The letter is false. You notice McIver has no Order. He also has no brains and it is questionable if he has a soul. Christ was crucified some 2000 years ago. The church is His body on earth. The pagans at Atlantic Beach want to crucify His body here on earth yet again.

We will continue to defend you against the Town's insane [sic]. As they continue to have to pay for damages they pigheadedly cause the church. You will also be entitled to damages if you want to pursue them.

First graders know about freedom of religion. The pagans of Atlantic Beach think they are above God and the Federal law. They do not seem to be able to learn. People like them in S.C. tried to defy Federal law before with similar lack of success.

McIver delivered the letter to the Town Council, and three council members thereafter filed a disciplinary complaint against Respondent. ODC instituted formal charges against Respondent as a result of his conduct.

At the hearing on June 8, 2010, counsel for ODC stated: "ODC alleges that [Respondent's] statements questioning whether Mr. McIver has a soul, saying that he has no brain, calling the leadership of the Town pagans and insane and pigheaded violates his professional obligations, which include his obligation to provide competent representation to his clients; his obligation under Rule 4.4 to treat third parties in a

way that doesn't embarrass them; Rule 8.4 to behave in a way that doesn't prejudice the administration of justice; and also [ ] the letter was not in conformity with his obligations under his oath of office, Rule 402(k)."[2] Counsel for ODC further alleged that Respondent had failed to cooperate with disciplinary authority by refusing to answer the allegations against him, threatening to sue the complainants for filing the grievance, and questioning ODC's authority.

The Hearing Panel found that Respondent was subject to discipline under Rule 7(a)(1) of the Rules for Lawyer Disciplinary Enforcement (RLDE), Rule 413, SCACR, for violating the following Rules of Professional Conduct (RPC) of Rule 407, SCACR: Rule 1.1 (competence), Rule 4.4 (respect for the rights of third persons), Rule 8.1 (knowing failure to respond to a lawful demand from a disciplinary authority), and Rule 8.4(e) (engaging in conduct prejudicial to the administration of justice).

The Hearing Panel further found Respondent is subject to discipline for violating the following provisions of the RLDE contained in Rule 413, SCACR: Rule 7(a)(3), RLDE (knowing failure to respond to a lawful demand from a disciplinary authority); Rule 7(a)(5), RLDE (engaging in conduct tending to pollute the administration of justice, tending to bring the legal profession into disrepute, and demonstrating an unfitness to practice law); and Rule 7(a)(6), RLDE (violating the Lawyer's Oath taken upon the admission to practice law in South Carolina).

The Hearing Panel found three aggravating circumstances: Respondent's lack of remorse and unwillingness to acknowledge his wrongdoing, his extensive disciplinary history, and his "disregard and disrespect for these proceedings."

The Hearing Panel stated "Respondent offered no evidence in mitigation," but noted he did call his wife as a witness, who testified that she suffers from cancer. The Hearing Panel stated Respondent offered no evidence that his wife's condi-

---

2. Rule 402(k)(3), SCACR provides every applicant for admission to practice law in this state must take and subscribe to the "Lawyer's Oath," by which the applicant pledges to act with "fairness, integrity, and civility, not only in court, but also in all written and oral communications." *Id.*

tion impacted his conduct in any way and, further, Respondent's wife was not diagnosed until after he sent the May 6, 2009 letter, so the Hearing Panel did "not consider Respondent's wife's medical condition as a mitigating factor."

The Hearing Panel recommended that Respondent be suspended from the practice of law. Three members of the Hearing Panel recommended a one-year suspension; one member recommended a two-year suspension. The Hearing Panel recommended that Respondent be required to pay a fine and the costs of these proceedings. It also recommended that Respondent be ordered to complete the Legal Ethics and Practice Program administered by the South Carolina Bar as a condition of reinstatement.

## II. LAW/ANALYSIS

Respondent has filed a brief opposing the Hearing Panel's recommended discipline, and ODC has filed a brief in support of the recommendations.

 "The authority to discipline attorneys and the manner in which the discipline is given rests entirely with this Court." *In re Tullis,* 375 S.C. 190, 191, 652 S.E.2d 395, 395 (2007). The Court "has the sole authority ... to decide the appropriate sanction after a thorough review of the record." *In re Thompson,* 343 S.C. 1, 10, 539 S.E.2d 396, 401 (2000). "The Court is not bound by the panel's recommendation and may make its own findings of fact and conclusions of law." *In re Hazzard,* 377 S.C. 482, 488, 661 S.E.2d 102, 106 (2008).

A disciplinary violation must be proven by clear and convincing evidence. *In re Greene,* 371 S.C. 207, 216, 638 S.E.2d 677, 682 (2006); *see also* Rule 8, RLDE, Rule 413, SCACR ("Charges of misconduct or incapacity shall be established by clear and convincing evidence, and the burden of proof of the charges shall be on the disciplinary counsel.").

### A. Rule 4.4(a), Respect for Rights of Third Persons

Rule 4.4(a) of the RPC provides in relevant part: "In representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person...." Rule 4.4(a), Rule 407, SCACR.

Respondent argues his letter served numerous purposes other than embarrassing others, such as serving as a "warning" that he would sue the Town "a fourth time," protecting his and his client's religious beliefs, and protecting the integrity of the courts. We agree with ODC and the Hearing Panel that it is clear Respondent's "substantial purpose" in making the remarks and copying the letter to the Town Manager and the Town Attorney was to intimidate and embarrass those he perceived as being contrary to his client's legal position.

Respondent argues the rule contains its own "safe harbor" that protects "uncivil" remarks when they serve other purposes. However, the fact that the letter could have served other purposes does not prevent his conduct from being in violation of Rule 4.4(a). *See, e.g., In re Norfleet,* 358 S.C. 39, 595 S.E.2d 243 (2004) (finding an attorney who became angry and spoke in a threatening manner to a school principal who refused to turn over a student's file had violated Rule 4.4; the attorney was attempting to obtain the file for the otherwise legitimate purpose of using it in litigation).

Moreover, an attorney may not, as a means of gaining a strategic advantage, engage in degrading and insulting conduct that departs from the standards of civility and professionalism required of all attorneys. *See In re Golden,* 329 S.C. 335, 341, 496 S.E.2d 619, 622 (1998) (determining the attorney's conduct in questioning a witness by using sarcasm, unnecessary combativeness, threatening words, and intimidation served no legitimate purpose other than to embarrass, delay, or burden another person and, even if the witness was being uncooperative, it would not justify the attorney's insulting conduct, which was found to have "completely departed from the standards of our profession" as well as "basic notions of decency and civility").

It is clear from the record in this matter that Respondent sent the letter as a calculated tactic to intimidate and insult his opponents. Although Respondent maintains he used many of the words at the request of his client, the Church, Respondent cannot discharge his responsibility for his use of disparaging name-calling and epithets by simply stating he was asked to behave in this unprofessional manner by his client.

Respondent has also justified his conduct by arguing that he has a duty to provide zealous representation. We agree that an attorney has an obligation to provide zealous representation to a client. However, an attorney also has a corresponding obligation to opposing parties, the public, his profession, the courts, and others to behave in a civilized and professional manner in discharging his obligations to his client. Legal disputes are often emotional and heated, and it is precisely for this reason that attorneys must maintain a professional demeanor while providing the necessary legal expertise to help resolve, not escalate, such disputes. Insulting and intimidating tactics serve only to undermine the administration of justice and respect for the rule of law, which ultimately does not serve the goals of the client or aid the resolution of disputes.

## B. Constitutional Arguments

To the extent Respondent argues the contents of his letter are protected by the United States Constitution by the First Amendment provisions for freedom of speech and freedom of religion, we conclude these rights do not prevent disciplinary action for an attorney's misconduct that is violative of the professional standards set by the courts.

"In the United States, the courts have historically regulated admission to the practice of law before them and exercised the authority to discipline and ultimately to disbar lawyers whose conduct departed from prescribed standards." *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1066, 111 S.Ct. 2720, 115 L.Ed.2d 888 (1991).

" 'Membership in the bar is a privilege burdened with conditions,' to use the oft-repeated statement of Cardozo, J., in *In re Rouss*, 221 N.Y. 81, 84, 116 N.E. 782, 783 (1917), quoted in *Theard v. United States*, 354 U.S. 278, 281, 77 S.Ct. 1274, 1276, 1 L.Ed.2d 1342 (1957)." *Id.* "It is unquestionable that in the courtroom itself, during a judicial proceeding, whatever right to 'free speech' an attorney has is extremely circumscribed." *Id.* at 1071, 111 S.Ct. 2720. Limitations on the free speech rights of attorneys are also recognized as to extrajudicial statements. *See id.* at 1075–77, 111 S.Ct. 2720.

■ "States have a compelling interest in the practice of professions within their boundaries, and ... as part of their power to protect the public health, safety, and other valid interests they have broad power to establish standards for licensing practitioners and regulating the practice of professions." *Florida Bar v. Went For It, Inc.*, 515 U.S. 618, 625, 115 S.Ct. 2371, 132 L.Ed.2d 541 (1995) (quoting *Goldfarb v. Virginia State Bar*, 421 U.S. 773, 792, 95 S.Ct. 2004, 44 L.Ed.2d 572 (1975) (alteration in original)).

■ "Although a lawyer does not surrender her freedom of expression upon admission to the bar, once admitted, a lawyer must temper her criticisms in accordance with professional standards of conduct." *Burton v. Statewide Grievance Committee*, 48 Conn.Supp. 94, 830 A.2d 1205, 1211 (2002) (citing *United States Dist. Court for the E. Dist. of Washington v. Sandlin*, 12 F.3d 861, 866 (9th Cir.1993)). "[T]here is a balancing of an attorney's right of free speech and the state's interest in preserving the integrity of the judicial system." *Id.* (citation omitted).

The Hearing Panel's determination that Respondent's conduct is not protected by the First Amendment is supported by clear and convincing evidence. Respondent could have zealously protected his client's rights by means other than using derogatory and demeaning comments. The legal profession is one of advocacy; however, Respondent's role as an advocate would have been better served by zealously arguing his client's legal position, not making personal attacks. His statement that the RPC are always trumped by the First Amendment is not a correct statement of the law, and we hold the Hearing Panel properly found his actions amounted to sanctionable misconduct.

## C. Rule 8.1, Failure to Cooperate

As to the Hearing Panel's finding that he violated the RPC by failing to cooperate with lawful demands from a disciplinary authority, Respondent argues "[t]here is nothing in the record indicating any lack of cooperation, simply that the Respondent was adamant about his client's rights and that they were being violated."

Respondent filed answers when requested, essentially justifying his conduct as being protected by the First Amendment, and he did file a witness list and an exhibit list and respond to all other inquiries from ODC and participate in the hearing in this matter. Thus, although we find Respondent clearly committed misconduct in other respects, we decline to find that he violated Rule 8.1 by failing to cooperate.

## D. Mitigation

 As to Respondent's arguments regarding the failure of the Hearing Panel to find his wife's health was a factor in mitigation, we find the record clearly supports the Hearing Panel's finding. Although his wife's diagnosis is certainly unfortunate, the evidence indicates Respondent's letter of May 6, 2009 predates her diagnosis. Moreover, even if she had been diagnosed sooner, Respondent failed to elicit any testimony on point as to how this affected his state of mind or affected his ability to conform his conduct to the rules concerning professional conduct.

## III. CONCLUSION

 After considering the record in this matter, we conclude Respondent has committed misconduct in the respects identified by the Hearing Panel, except for the allegation regarding the failure to cooperate. We further find the Hearing Panel's suggestion of a definite suspension is appropriate under the circumstances.

Based on Respondent's blatant incivility and lack of decorum in this instance and the aggravating factors found by the Hearing Panel, including his disciplinary history, we impose a definite suspension of ninety days. We further order Respondent to complete the Legal Ethics and Practice Program administered by the South Carolina Bar within six months of reinstatement.[3] Respondent's conduct in this matter reflects poorly on himself as a member of the legal profession and reflects negatively upon the profession as a whole. He represented to this Court at oral argument that in the future he will conduct himself in accordance with the RPC and treat all

---

3. We decline the recommendation of the Hearing Panel to impose a fine or costs.

persons in a civil, dignified, and professional manner as is expected of all members of the South Carolina Bar. We expect nothing less.

**DEFINITE SUSPENSION.**

TOAL, C.J., PLEICONES, BEATTY, KITTREDGE and HEARN, JJ., concur.