731 S.E.2d 277

**In the Matter of George Thomas SAMAHA, III, Respondent.**

**No. 27149.**

Supreme Court of South Carolina.

Heard June 19, 2012.
Decided Aug. 1, 2012.

Lesley M. Coggiola, Disciplinary Counsel, and William Curtis Campbell, Assistant Disciplinary Counsel, both of Columbia, for Office of Disciplinary Counsel.

Harry Leslie Devoe, Jr., of New Zion, for Respondent.

PER CURIAM.

In this attorney disciplinary action, the Commission on Lawyer Conduct ("the Commission") considered Formal

Charges filed against attorney George Thomas Samaha, III ("Respondent") that arose from his representation of a widow in matters involving her late husband's estate. A Hearing Panel of the Commission found Respondent had committed misconduct in the course of this representation by (1) charging excessive fees, (2) failing to cooperate during probate court proceedings and making a false statement under oath, and (3) engaging in a conflict of interest. We find Respondent has committed misconduct warranting the imposition of a one-year definite suspension and order Respondent to pay the costs of these proceedings.

## I. BACKGROUND

Respondent was admitted to the practice of law in South Carolina on January 3, 1995. The Office of Disciplinary Counsel ("ODC") filed Formal Charges against Respondent on August 14, 2009 alleging he committed misconduct in his representation of Lillian J. McLure ("Lillian"). Respondent filed a Response to Formal Charges on September 17, 2009 denying the pertinent allegations. The Hearing Panel conducted a two-day hearing on the charges on June 30 and July 1, 2010.

## II. PANEL REPORT

### A. Findings of Fact

The Hearing Panel issued a Panel Report that was filed with the Commission on December 15, 2011. The Hearing Panel made the following Findings of Fact, which we find are fully supported by the record. In August 2000, Respondent prepared two wills for Lillian and her husband, Francis G. McLure ("Frank"), in which each left everything to the other. Frank had always handled the couple's financial matters and took care of Lillian during their marriage. Lillian, who was then in her late 70s, was described as being a very trusting person who had a limited formal education and needed help with her financial affairs.

A few months later, in October 2000, Respondent prepared what he termed a "sham" will for Frank at Frank's request.[1]

---

1. Frank's October 2000 will was ultimately admitted to probate by the probate court judge, who found it was the later will and was properly executed, witnessed, and notarized.

In the new will, Frank devised $100,000 to his sister-in-law, Ann McLure ("Ann"), and made smaller bequests to others. Frank told Respondent that he made this new will "[t]o get [Ann] off his back" about an inheritance. Frank informed Respondent that all of his assets, with the exception of a vehicle, were titled in the names of himself and Lillian as joint tenants with a right of survivorship. Consequently, Ann would be unable to find sufficient assets in the estate to fund the bequests. Frank intended that all of his assets would go to Lillian. At some point, Respondent also prepared one or more documents giving Ann a power of attorney for both Frank and Lillian.

Frank died on January 3, 2001. Thereafter, Ann, using a power of attorney, removed $130,000 from a joint checking account held by Lillian and her husband. The money was taken without Lillian's knowledge or permission and was discovered when she reviewed her banking statements. Ann also took a vehicle, Frank's ashes, and Frank's financial notebooks.

Lillian retained Respondent to protect her late husband's estate and to recover the funds taken by Ann. In May 2001, Respondent wrote to Lillian's family members in New York and recommended the appointment of a conservator to protect her interests because "[a] conservator must file accountings with the Court, whereas someone who has her Power of Attorney can transfer and acquire any or all of her assets without being accountable to anyone." Respondent never obtained a conservator, although he acknowledged that he did not need the family's assistance to have one appointed. Thereafter, on June 26, 2001, Respondent had Lillian execute a written Contract for Legal Services, which called for Respondent (1) to "marshal" the assets of Frank's estate for a 25% contingency fee, and (2) to file a conversion action against Ann.[2]

Respondent also prepared the following documents signed by Lillian: (1) an Irrevocable Living Trust dated July 16, 2001, which named Respondent as the sole trustee; (2) a Last

---

2. Respondent maintained he believed Lillian to be competent at that time. Medical evidence in the record, prepared in 2002, subsequently called into question Lillian's abilities.

Will and Testament, executed on July 24, 2001, designating himself the personal representative for Lillian's estate; and (3) a General Durable Power of Attorney, executed on October 19, 2001, which appointed Respondent as Lillian's attorney-in-fact. Respondent did not advise Lillian to seek outside counsel to review these documents.

Thereafter, Respondent refused to turn over documents to George McDowell, the attorney appointed to handle Frank's estate. McDowell had requested the records in order to perform his duty to file an accounting of Frank's estate. The probate court requested that Respondent bring Lillian to a scheduled probate court hearing. Around October 2001, however, Lillian moved to an assisted living facility in Catskill, New York, and Respondent failed to reveal her location despite repeated requests from McDowell.

In subsequent probate court hearings concerning Frank's estate, Respondent admittedly failed to cooperate in turning over documents needed for the accounting. In addition, he falsely told the probate court judge that he did not know where Lillian resided and repeatedly refused to reveal Lillian's whereabouts. Respondent maintained in his testimony to the Hearing Panel that he was protecting Lillian from Ann, the probate court judge, and others, but he acknowledged there were other methods, besides making false statements under oath, to protect his client. Although Respondent still insisted that he did not know where Lillian was *the day* of the hearing, because she was traveling, he conceded that he did know where Lillian resided because he was paying for her bills at the assisted living facility.

Respondent ultimately settled a malpractice action brought against him by McDowell on behalf of Lillian. Respondent did not admit liability, but he contributed $35,000 towards the settlement amount of $245,000, with the remainder being paid for by his insurance carrier. McDowell also recovered the funds taken by Ann.

## B. Misconduct

Based on the foregoing, the Hearing Panel found Respondent committed misconduct in three areas. First, Respondent charged excessive legal fees. The Hearing Panel questioned

the need for Respondent's charges when he could have accomplished faster results by immediately revoking Ann's power of attorney and sending the revocation to the appropriate account holders. Ultimately, Respondent marshaled only nine assets, all of which Lillian had held in joint tenancy with her late husband with a right of survivorship. However, pursuant to his 25% contingency fee arrangement, Respondent charged a fee of $115,000 to marshal the assets for an estate valued at less than $500,000. Respondent also sold Lillian's marital home to a buyer who was presented to him by one of Lillian's neighbors, yet he charged a 25% marshaling fee on the home sale pursuant to his contact for services. He also distributed a total of $75,000 of the proceeds from the sale of the home to two of Lillian's neighbors. One neighbor described this as an "extraordinarily generous" gift while simultaneously acknowledging that Lillian did not have a good understanding of what things cost. Respondent did not change his form of compensation to an hourly rate when he saw the true nature of the work involved, and the Hearing Panel noted "Respondent did nothing more than what a personal representative of the estate would have done for a much lesser fee."[3]

Second, Respondent failed to cooperate and made a false statement under oath during the probate court proceedings. Respondent failed to turn over documents to the attorney appointed to handle the estate of Lillian's late husband and he untruthfully stated he did not know Lillian's whereabouts when he was aware Lillian was staying at an assisted living facility in New York because he was paying her bills there.

Third, Respondent engaged in a conflict of interest. Respondent failed to advise Lillian to seek outside counsel to review the documents Respondent created giving himself Lillian's power of attorney, making himself the sole trustee of her Irrevocable Living Trust, and naming himself as Lillian's personal representative.

---

3. The fee for a personal representative is statutorily limited to five percent "of the appraised value of the personal property of the probate estate plus the sales proceeds of real property of the probate estate," except where "otherwise approved by the court for extraordinary services." S.C.Code Ann. § 62–3–719(a) (2009).

## C. Violation of Disciplinary Rules

The Hearing Panel found Respondent had violated the following provisions of the Rules of Professional Conduct ("RPC") contained in Rule 407, SCACR: Rule 1.1 (competence); Rule 1.3 (diligence); Rule 1.5(a) (reasonableness of fee); Rule 1.7(b) [4] (conflict of interest); Rule 1.8(a) (pecuniary interest); Rule 3.2 (expediting litigation); Rule 3.3(a)(1) (false statement of fact or law to a tribunal); Rule 3.4(a) (unlawfully obstructing another party's access to evidence); Rule 3.4(c) (knowingly disobeying an obligation under the rules of a tribunal); Rule 8.4(a) (violating or attempting to violate the RPC); Rule 8.4(d) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation); and Rule 8.4(e) (engaging in conduct that is prejudicial to the administration of justice).

In addition, it concluded Respondent had violated the following provisions of the Rules for Lawyer Disciplinary Enforcement ("RLDE") contained in Rule 413, SCACR: Rule 7(a)(1) (violating or attempting to violate the RPC); Rule 7(a)(5) (engaging in conduct tending to pollute the administration of justice or to bring the courts or the legal profession into disrepute or demonstrating an unfitness to practice law); and Rule 7(a)(6) (violating the Oath of Office taken upon the admission to practice law in South Carolina).

## D. Aggravating & Mitigating Factors; Recommended Sanction

The Hearing Panel found the following three aggravating factors: (1) a dishonest or selfish motive (Respondent's lack of

---

4. Rule 1.7(b) of the RPC provided at the time of Respondent's misconduct that a lawyer shall not represent a client if the representation may be materially limited by the lawyer's own interests or responsibilities to another client, unless the lawyer reasonably believes the representation will not be adversely affected and the client consents after consultation. Rule 1.7 was amended in 2005. Respondent's representation of Frank in preparing a second will adverse to Lillian's interests was also arguably a conflict of interest and this conduct is, in essence, the source of all of the subsequent problems in this matter. However, as the Hearing Panel noted, although Respondent's witness (and former counsel) suggested Respondent's preparation of the second will was a conflict of interest since Respondent had prepared joint wills for the couple only a few months before, ODC did not pursue an allegation in this regard.

cooperation during the probate court proceedings was for the purpose of concealing his excessive fee and the mishandling of Lillian's funds); (2) Respondent's disciplinary history (on October 19, 2001, Respondent received a Letter of Caution with a finding of minor misconduct citing Rules 1.1, 1.2, 1.3, 1.4, and 8.1 of the RPC, Rule 407, SCACR); and (3) the vulnerability of the victim (the Hearing Panel found Respondent's actions "most troubling" since Respondent himself had initially recommended the appointment of a conservator to protect Lillian's interests, and Lillian was a very trusting and naive person who clearly relied on Respondent to adequately handle her financial matters, yet Respondent had her execute an unreasonable fee agreement and failed to properly manage her assets and funds).

The Hearing Panel found two mitigating factors: (1) the delay in the disciplinary proceedings, which were pending over a period of many years; and (2) the imposition of other sanctions or penalties, i.e., the fact that Respondent had settled a malpractice action arising out of this matter, in which he contributed $35,000 towards the settlement amount of $245,000.

The Hearing Panel recommended that Respondent be suspended from the practice of law for one year and that he be ordered to pay the costs of these proceedings. The costs reported by the Commission are $3,086.64.

## IV. LAW

Neither Respondent nor ODC has filed a brief with this Court taking exception to the Panel Report and the recommended sanction of a definite suspension of one year. *See* Rule 27(a), RLDE, Rule 413, SCACR ("The failure of a party to file a brief taking exceptions to the report constitutes acceptance of the findings of fact, conclusions of law, and recommendations.").

The authority to discipline attorneys rests entirely with this Court. *In re White*, 391 S.C. 581, 707 S.E.2d 411 (2011); *see also* S.C. Const. art. V, § 4 ("The Supreme Court shall have jurisdiction over the admission to the practice of law and the discipline of persons admitted."). The Court "has the sole authority ... to decide the appropriate sanction after

a thorough review of the record." *In re Thompson,* 343 S.C. 1, 10, 539 S.E.2d 396, 401 (2000). "The Court is not bound by the panel's recommendation and may make its own findings of fact and conclusions of law." *In re Hazzard,* 377 S.C. 482, 488, 661 S.E.2d 102, 106 (2008); *see also* Rule 27(e)(2), RLDE, Rule 413, SCACR ("The Supreme Court may accept, reject, or modify in whole or in part the findings, conclusions and recommendations of the Commission.").

▮ "A disciplinary violation must be proven by clear and convincing evidence." *In re Greene,* 371 S.C. 207, 216, 638 S.E.2d 677, 682 (2006); *see also* Rule 8, RLDE, Rule 413, SCACR ("Charges of misconduct or incapacity shall be established by clear and convincing evidence, and the burden of proof of the charges shall be on the disciplinary counsel.").

Pursuant to Rule 27(a), RLDE, Rule 413, SCACR, the factual findings made by the Commission are deemed admitted by Respondent's failure to file a brief, and we find they are fully supported by the record. Further, we agree with the Hearing Panel that the factual findings support a finding of misconduct. Having found ODC has established Respondent's misconduct by clear and convincing evidence, this Court need only determine the appropriate sanction. *In re Hursey,* 395 S.C. 527, 719 S.E.2d 670 (2011).

After carefully considering the entire record in this matter, including the transcripts and exhibits submitted to this Court, we conclude the recommendation of the Hearing Panel for a one-year definite suspension is an appropriate sanction for Respondent's misconduct. *See In re Prendergast,* 390 S.C. 395, 402, 702 S.E.2d 364, 367 (2010) ("Although Rule 1.8 does not prohibit attorney-client business relationships, it clearly delineates three mandatory requirements an attorney must satisfy to comply with the standards of ethical conduct."); *In re Crummey,* 388 S.C. 286, 289–91, 696 S.E.2d 589, 591 (2010) (noting the attorney admitted that she drafted documents naming herself as personal representative and trustee for a trust without having the client seek the advice of other counsel, and she failed to make an accounting to the new personal representative and to the probate court; among other rules, this Court found Respondent had violated the following provisions of the RPC: Rule 3.2 (reasonable efforts

to expedite litigation); Rule 3.3 (false statement of fact to tribunal); Rule 4.1 (false statement of fact to third person when representing a client); Rule 8.4(a) (violating the RPC); Rule 8.4(d) (engaging in conduct involving dishonesty, fraud, deceit, and misrepresentation); and Rule 8.4(e) (conduct prejudicial to the administration of justice)); *In re Jones,* 359 S.C. 156, 597 S.E.2d 800 (2004) (imposing a one-year suspension for the attorney's misconduct in misrepresenting to disciplinary counsel, while under oath, that he was not licensed to practice law in another state, thus violating Rule 3.3, along with his misconduct in failing to perfect a criminal defendant's direct appeal, to file a divorce on behalf of a client, and to cooperate in disciplinary proceedings); *cf. In re Wilmeth,* 373 S.C. 631, 632–33, 647 S.E.2d 185, 186 (2007) (sanctioning attorney with disbarment, pursuant to an agreement for discipline, for misconduct in seven matters; the Court noted the attorney had "drafted [ ] wills for two individuals and named herself as an alternate and/or substitute personal representative in each of the wills without complying with the provisions of Rule 1.8, RPC, Rule 407, SCACR," charged excessive attorney's fees and statutory personal representative's fees, and had "misappropriated $861,367.52 from either one or both of the estates").

We also agree with the Hearing Panel's recommendation regarding the payment of costs. The imposition of costs and the determination of their amount are within this Court's discretion. *See In re Thompson,* 343 S.C. at 13, 539 S.E.2d at 402 ("The assessment of costs is in the discretion of the Court."); Rule 27(e)(3), RLDE, Rule 413, SCACR ("The Supreme Court may assess costs against the respondent if it finds the respondent has committed misconduct. Unless otherwise ordered by the Court, costs shall be paid within 30 days of the filing of the opinion or order assessing costs."); Rule 7(b)(6), RLDE, Rule 413, SCACR [5] (stating sanctions for misconduct may include ordering payment of the costs of the proceedings). The payment of costs is a crucial component of any disciplinary action, and it is within the scope of allowable sanctions frequently implemented by this Court. *In re Prendergast,* 390 S.C. at 403–04, 702 S.E.2d at 368.

---

5. This provision was formerly Rule 7(b)(8), RLDE, Rule 413, SCACR.

## V. CONCLUSION

We hereby suspend Respondent from the practice of law in this state for one year. Respondent is also ordered to reimburse the Commission for the costs incurred in these proceedings, which total $3,086.64. Within fifteen days of the date of this opinion, Respondent shall file an affidavit with the Clerk of Court showing that he has complied with Rule 30 of Rule 413, SCACR (duties of attorney following disbarment or suspension).

**DEFINITE SUSPENSION.**

TOAL, C.J., PLEICONES, BEATTY, KITTREDGE and HEARN, JJ., concur.