24435

In the Matter of Joseph Michael FULLWOOD, Respondent.
(471 S.E. (2d) 151)

Supreme Court

*Clifford O. Koon, Jr.,* of *Rogers, Townsend & Thomas, PC,* Columbia, *for respondent.*

*Attorney General Charles Molony Condon* and *Assistant Deputy Attorney General J. Emory Smith, Jr.,* Columbia, *for complainant.*

Heard Apr. 16, 1996.

Decided May 20, 1996.

*Per Curiam:*

In this attorney grievance matter, both the Hearing Panel and the Executive Committee recommended that respondent be disbarred for the practice of law. We agree with the Hearing Panel's findings of misconduct[1] and disbar respondent from the practice of law.

This matter was initiated by the filing of a formal complaint dated November 16, 1994, which alleged that respondent had engaged in fraudulent and criminal behavior and had misappropriated client funds for his own personal use. Respondent answered the complaint on December 5, 1994, admitting most of the conduct of which he was accused. This Court temporarily suspended respondent on September 22, 1994 for the conduct at issue here. Respondent has remained under suspension since that time.

---

[1] The Executive Committee found misconduct in two matters in which the Hearing Panel failed to find misconduct, the Grace Smith Matter, which concerned a personal loan from a former client, and the Mullins/Siler Matter, which concerned, among other things, the assignment of a judgment. The Hearing Panel carefully evaluated the evidence and concluded no misconduct had been proven by clear and convincing evidence in the Grace Smith Matter. Although the Hearing Panel found *some* misconduct with respect to the Mullins/Siler Matter, it did not find that Fullwood failed to perform work for which he was paid or that he misrepresented a matter to his clients, as the Attorney General's office had alleged. The Executive Committee found misconduct in both the Grace Smith Matter and the Mullins/Siler Matter, but did not explain its reasoning or state the facts it relied on to find that there was clear and convincing evidence such misconduct occurred. Based on our examination of the Record, we adopt the findings of the Hearing Panel with regard to these two matters. To the extent the Hearing Panel found misconduct with respect to the Mullins/Siler Matter, we also adopt those findings.

Respondent has committed the following acts of misconduct, all of which he admits:

*Jones Trust Fund*

Fullwood was a co-trustee of a trust the beneficiary of which was Trevor Jones, a minor. The conservator and other co-trustee was Aleta Jones, Trevor's mother.

The trust was created on or about December 2, 1988 from the proceeds of a settlement in connection with a life insurance policy on the life of Stephen Wayne Jones, Trevor's father. The settlement was for $59,000, of which $19,666 was Fullwood's attorney fee as approved by the probate court.

The remaining remaining amount, $33,565.50, constituted the corpus of the trust and was deposited in an interest-bearing account at Lexington State Bank. Fullwood and Aleta Jones were to co-sign all checks written from that account. Under the terms of the trust, Aleta Jones, as conservator, was ordinarily limited to a $250 monthly disbursement from the trust fund. The probate court could approve other expenditures for Trevor's benefit, but such expenditures generally had to be for education, medical care, and clothing.

In September 1989, Fullwood began to raid the trust and to convert trust funds to his personal use. Specifically, between September 1989 and December 1989, Fullwood converted approximately $27,700 of the trust corpus. In so doing, Fullwood forged Aleta Jones's signature on several checks. The matter concerning the Trevor Jones Fund finally was brought to the attention of the Board in September 1994.

Thomas Quinn, a special investigator for the Attorney General's office, was able to trace $27,700 of misappropriation by Fullwood. Fullwood paid back some of the money prior to the hearing. However, evidence at the hearing established that Fullwood still owed the trust approximately $16,030.[2]

Evidence presented at the hearing also established that Fullwood filed false accounting with the probate court. On the June 1990 accounting for the trust, Fullwood forged the signature of a customer service representative from Lexington

---

[2] At argument before this Court, the Attorney General's office represented that the correct figure, according to a special investigator for the Attorney General, was $18,465.75. Fullwood has already paid some of this money back to the Trevor Jones Trust.

State Bank, where the trust funds were held. Fullwood also had an accountant write a letter to the probate court recommending the (largely nonexistent) trust funds be placed in a secure education funding account underwritten with low-risk bonds. At the time she wrote the letter, the accountant did not know Fullwood had raided the trust and misappropriated funds.

We find Fullwood violated former Rule DR 9-102, which required him to maintain and account for the integrity of a separate client trust fund, as well as former Rules DR 1-102(A)(3), (4), and (5), by fraudulently converting funds to his own use, in a manner prejudicial to the administration of justice. By filing the false accounting with the probate court and then continuing to file accountings in the following years, Fullwood perpetrated a fraud on the court, in violation of Rules 8.4(c), (d), and (e) of the current Rules of Professional Conduct. Finally, Fullwood's sponsoring of the accountant's opinion letter constituted a violation of Rule 3.3(a)(4), RPC, which prohibits an attorney from offering to a tribunal evidence known to the attorney to be false.

### Barbara Friendly Matter

In early 1994, Fullwood represented Barbara Friendly in an action arising out of an automobile accident in which Ms. Friendly was injured. Fullwood and Friendly entered into a contingency fee agreement under which Fullwood would receive twenty-five percent of any settlement be secured for Friendly.

Fullwood secured a $25,000 settlement for Friendly. He gave her a check for $14,000. Of the remaining $11,000, $6,250 constituted Fullwood's fee, and $4,750 was to be paid to various medical providers and to Blue Cross/Blue Shield. Fullwood agreed to pay the medical providers as well as Blue Cross. He never did so. Instead, he appropriated the $4,750 for his own use. Ms. Friendly ultimately paid the medical providers herself.[3]

Fullwood also was to file papers so that Ms. Friendly could receive her PIP coverage in the amount of $1,000. He never

---

[3] It is unclear from the Record whether Blue Cross/Blue Shield has yet been paid.

filed the necessary papers, and Ms. Friendly had to file the PIP claim herself.

With regard to the Barbara Friendly matter, Fullwood violated Rule 1.15(b) by failing to deliver funds to which another was entitled; Rules 8.4(c) & (d), RPC, by engaging in conduct involving moral turpitude; and Rule 1.5(c), RPC, by failing to furnish Ms. Friendly a settlement statement reflecting remittance to the client and disbursements of the funds that were subject to the contingent fee agreement.

### Thomas Sims Matter

Fullwood represented Thomas Sims in a workers' compensation case. Pursuant to an Order by the Workers' Compensation Commission, Wausau Insurance Company issued a $4,662.40 check payable to Fullwood and to Sims. Fullwood forged Sims's signature on the check and converted the proceeds to his personal use. As of the time of the hearing, Sims had not yet received any of the funds.

Fullwood's forgery of the check and conversion of the funds violated Rules 8.4(b) & (d), RPC, because the actions involved criminal acts reflecting adversely on Fullwood's fitness as a lawyer and also involved dishonesty.

### The Kaminer Matter

Fullwood represented Louise Kaminer in an action against her ex-husband James Kaminer. The action concerned a voluntary transfer of custody of the Kaminers' daughter from Ms. Kaminer to Mr. Kaminer. The Kaminers wanted to file a consent order reflecting the transfer of custody and discontinuing any child support obligation by Mr. Kaminer.[4] Originally, Mr. Kaminer was not represented by counsel.

Fullwood dragged his feet in preparing the necessary papers, and Mr. Kaminer eventually retained attorney Kirk Morgan. Morgan sent several letters to Fullwood requesting that he act. The action finally was filed on or around May 2, 1994, approximately five months after Morgan's first letter requesting that Fullwood file the necessary papers. The Consent Order was filed on July 19, 1994.

Fullwood testified that for some time, no one gave him the

---

[4] Even though the parties really only wanted a consent order filed in court, it was necessary that an action be filed prior to entry of a consent order.

$55 filing fee. However, Morgan forwarded this amount to Fullwood on or about January 20, 1994, yet Fullwood took no action whatsoever until at least late March. This episode (while still ongoing) came to the attention of the Commission on Grievances and Discipline, which sent Fullwood a letter requesting an explanation of the delay. Fullwood was delinquent in responding to the letter, and the Commission had to send him a second letter. Fullwood admitted this behavior in the Answer to the Complaint filed against him. He noted at the hearing, however, that he represented Ms. Kaminer *pro bono*, if he represented her at all.

Fullwood failed to act with reasonable diligence in attending to the Kaminer matter, in violation of Rule 1.3, RPC.

Respondent admits to several very serious acts of misconduct. Given the level of misconduct, disbarment is the only appropriate sanction. *See, e.g., In re Abney*, 316 S.C. 182, 447 S.E. (2d) 848 (1994) (disbarring attorney for, *inter alia*, converting settlement funds to his own use and failing to pay medical providers); *In re Boyle*, — S.C. —, 450 S.E. (2d) 578 (1994) (disbarring attorney for misappropriation of client funds); *In re Gibbes*, — S.C. —, 450 S.E. (2d) 588 (1994) (disbarring attorney for, *inter alia*, misappropriation and conversion of client funds); *In re Ackerman*, 313 S.C. 380, 438 S.E. (2d) 229 (1993) (disbarring attorney for, *inter alia*, misappropriation of client funds); *In re Bowers*, 303 S.C. 282, 400 S.E. (2d) 134 (1991) (disbarring attorney for conversion of client funds and improper use of client trust accounts); *In re Bosserman*, 298 S.C. 198, 379 S.E. (2d) 130 (1989) (disbarring attorney for, *inter alia*, misappropriation of client funds for own personal use); *In re Lempesis*, 293 S.C. 510, 362 S.E. (2d) 10 (1987) (disbarring attorney for, *inter alia*, forging signature on check and converting funds to his own use); *In re Perry*, 291 S.C. 124, 352 S.E. (2d) 479 (1987) (disbarring attorney for forging clients' signature on checks and converting client funds to personal use). Although it is very clear that Fullwood was suffering from severe alcoholism and depression, such conditions do not excuse his misconduct. *See, e.g., In re Lempesis, supra.* The public must be protected from dishonest lawyers, whatever the cause of the dishonesty.

Accordingly, we disbar respondent from the practice of law. Within fifteen days of the date of this opinion, respondent

shall return his certificate of admission to practice law and file an affidavit with the Clerk of Court showing that he has complied with Paragraph 30 of Rule 413, SCACR.

Disbarred.