657 S.E.2d 465

**In the Matter of O. Lee STURKEY, Respondent.**

**No. 26426.**

Supreme Court of South Carolina.

Heard Dec. 5, 2007.
Decided Jan. 28, 2008.

Lesley M. Coggiola, Disciplinary Counsel, and Barbara M. Seymour, Assistant Deputy Disciplinary Counsel, both of Columbia, for the Office of Disciplinary Counsel.

C. Rauch Wise, of Greenwood, for Respondent.

## PER CURIAM:

In this attorney disciplinary matter, the Office of Disciplinary Counsel (ODC) filed formal charges against respondent, O. Lee Sturkey, alleging misconduct in eight different criminal matters. Sturkey failed to answer, and he was found to be in default. After a hearing, both the sub-panel and the full panel of the Commission on Lawyer Conduct recommended that respondent be sanctioned with: a nine-month definite suspen-

sion; mandatory compliance with a law office management assistance program as a condition of reinstatement; and payment of costs of the proceedings. We impose the recommended sanction. However, we address ODC's argument on appeal that the Commission erred in allowing certain evidence to be considered in mitigation without giving ODC the opportunity to present counter-testimony.

## FACTS

Respondent, the part-time public defender for McCormick, Edgefield, and Saluda counties, had a caseload averaging more than 700 cases per year. Eight complaints against him by clients or spouses of clients were received by ODC. Respondent failed to respond to the formal charges, and he was held in default. The factual allegations regarding the eight matters, as admitted by virtue of respondent's default, are as follows: (1) ODC received a complaint from Client A alleging respondent failed to adequately represent him in a criminal matter; (2) ODC received a complaint from Client B alleging respondent failed to adequately communicate with him regarding a criminal matter and that he failed to appear in court; (3) ODC received a complaint from Client C alleging respondent failed to pursue his client's objectives and failed to adequately communicate with him about his criminal case; (4) ODC received a complaint from Client D alleging respondent failed to pursue his objectives in his criminal matter; (5) ODC received a complaint from Client E alleging respondent failed to provide him with information and documents he requested relating to his criminal case; (6) ODC received a complaint from Client F alleging respondent failed to adequately communicate with him about his criminal case; (7) ODC received a complaint from Client G alleging respondent failed to diligently pursue his criminal case and failed to respond to his calls and letters; and (8) ODC received a complaint from the husband of Client H, alleging respondent engaged in confidential conversations with Client H in front of law enforcement officers and respondent failed to provide her with competent and diligent representation. Respondent failed to: comply with ODC's initial requests to respond to the complaints of Client A and Client B; respond to the request for a written response in all eight matters; and provide additional informa-

 

tion requested by ODC, including client files, in regard to Client A, Client B, Client F, and Client G.

### The Hearing

Because respondent admitted the factual allegations by virtue of his default, a hearing was held before the sub-panel solely for the purpose of recommending an appropriate sanction. Despite the fact that respondent only gave ODC notice of witnesses via telephone two days before the hearing, ODC did not object to the presentation of respondent's mitigation witnesses. One of the witnesses was Ervin Maye, the assistant solicitor in charge of McCormick, Edgefield, and Saluda counties. In addition to testifying favorably about his observations of respondent's skills as a trial lawyer and character, Maye began to testify regarding the favorable disposition of some of the criminal matters against the complainants. ODC objected to any testimony regarding the underlying criminal matters, arguing they were deemed admitted by default and any testimony regarding lack of harm would have no bearing on the case. The sub-panel allowed the testimony, limited to whether a client was harmed, and denied ODC's request for a continuance in order to call the complainants to testify to counter the information.

After Maye's testimony regarding the outcome of some of the matters, ODC renewed its objection to the consideration of the outcome of the clients' cases in determining harm because they were not given notice of the purpose of Maye's testimony such that they could present counter testimony regarding harm to clients. The sub-panel ultimately denied the motion, stating it considered all the matters from the complaint deemed admitted via respondent's default.

After presenting the testimony of another character witness, respondent testified. Respondent stated he had a large caseload as a public defender, but he could not explain his failure to respond to ODC's requests other than being completely overwhelmed. Over ODC's objections, respondent also testified regarding the favorable outcomes of the cases involving Clients B, C, D, E, F, and H.

After the hearing, the sub-panel found respondent engaged in misconduct in violation of: Rule 7(a)(1) of the Rules for

Lawyer Disciplinary Enforcement, Rule 413, SCACR (violating a Rule of Professional Conduct); Rule 7(a)(3) (willful failure to comply with a subpoena or knowing failure to respond to a lawful demand from a disciplinary authority); and Rule 7(a)(5) (conduct tending to pollute the administration of justice or bringing the legal profession into disrepute). With regard to the specific matters before the sub-panel, it found respondent violated the following rules:

(1) Rule 1.4, RPC (failure to communicate with a client) with regard to Clients B, C, E, F, and G;

(2) Rule 1.2, RPC (failure to pursue client's objectives and scope of representation) in the matters involving Clients C and D;

(3) Rule 1.3, RPC (failure to represent with due diligence) with regard to Clients G and H; and

(4) Rule 1.1, RPC (competence), and Rule 1.6 (confidentiality) with regard to Client H.

The sub-panel considered as aggravating factors: (1) respondent's prior disciplinary history and failure to comply with the requirement that he change the way he ran his office; (2) his pattern of misconduct and multiple offenses; (3) his failure to respond to or cooperate with ODC; and (4) his substantial experience practicing law. The sub-panel considered as mitigating factors the evidence of respondent's good character and abilities as a trial lawyer. With regard to the evidence that there was no harm to clients, the sub-panel stated:

We recognize that client harm is a subjective factor difficult to measure when clients plead guilty, but we do consider the apparent lack of harm as a mitigating factor for which we give appropriate weight in our discretion as a panel. As a result of Respondent's failure to answer the formal charges, it is undisputed that Respondent failed to adequately communicate with his clients in the [Client B], [Client C], [Client E], [Client F], and [Client G] matters; that he failed to adequately pursue his clients' objectives in the [Client C] and [Client D] matters; that he failed to diligently pursue his clients' cases in the [Client G] and [Client H] matters, and, that he failed to competently represent [Client H] and revealed confidential information in her case. The facts that these clients ultimately plead [sic] guilty to lesser

offenses than those with which they were originally charged and that the solicitor believes these were good results are given slight consideration in our recommendation, due to the difficulty in measuring harm under such circumstances.

The sub-panel gave some consideration to respondent's heavy caseload and the systematic problems with the public defender system, but it found respondent still had the obligation to only accept as many cases as he could ethically handle. The sub-panel noted that, at a minimum, respondent should have adopted the case and office management systems introduced to him during his participation in LOMAP pursuant to his 2000 disciplinary sanction. Finally, the sub-panel noted respondent's large caseload and the lack of harm to clients did not excuse his failure to respond to or communicate with his clients. After considering all of these matters, the sub-panel recommended respondent be sanctioned with a definite suspension of nine months, required to participate in a law office management assistance program, and pay the costs of the proceedings.

Over ODC's objection that it was error for the sub-panel to consider Maye's testimony of a favorable result as evidence of no harm to clients, the full panel adopted the sub-panel's report and recommendation. ODC appeals.

## DISCUSSION

Neither ODC nor Sturkey complain about the recommended sanction. Sturkey's failure to communicate with his clients, failure to pursue their objectives, and failure to respond to ODC inquiries and requests to answer or provide documentation regarding the eight matters are serious offenses. Considering Sturkey's failure to adequately communicate with his clients and complete disregard for the disciplinary process, we agree with the Commission that Sturkey violated the Rules of Professional Conduct and, thus, there are grounds for discipline in this case. *See* Rule 1.1, RPC (competence); Rule 1.2, RPC (failure to pursue client's objectives and scope of representation); Rule 1.3, RPC (failure to represent with due diligence); Rule 1.4, RPC (failure to communicate with a client); and Rule 1.6 (confidentiality); Rule 7(a)(1), RLDE (violating a Rule of Professional Conduct); Rule 7(a)(3), RLDE (willful failure to comply with a subpoena or knowing failure to respond to a lawful demand from a disci-

plinary authority); and Rule 7(a)(5), RLDE (conduct tending to pollute the administration of justice or bringing the legal profession into disrepute).

Because of the seriousness of his offenses, we find the Commission's recommendation of a nine-month suspension, mandatory compliance with a law office management assistance program, and payment of costs is appropriate. *See In re Strait,* 343 S.C. 312, 540 S.E.2d 460 (2000) (sanctioning attorney to a six-month and one day suspension for: failing to act diligently; failing to return client phone calls; failing to inform client of dismissal of case; failing to return client materials; and failing to timely respond to ODC correspondence); *In re Shibley,* 337 S.C. 50, 522 S.E.2d 812 (1999) (sanctioning attorney to a two-year suspension for: failing to represent client diligently, promptly, and competently; failing to keep client informed about the status of the case; terminating representation without taking steps to protect client's interest; violating a valid court order; and failing to cooperate with the ODC investigation); *In re Matson,* 333 S.C. 242, 509 S.E.2d 263 (1998) (sanctioning attorney to a definite suspension for eighteen months for: neglect of legal matters; failure to communicate with clients; failure to protect clients' interests when terminating representation; and failure to cooperate with ODC).

■ However, ODC complains that the Commission should not have considered the testimony regarding the final disposition of the complainants' cases as evidence of lack of harm in mitigation without allowing ODC the opportunity to present counter-evidence. We agree.

Generally, parties to disciplinary proceedings are required to exchange witness lists within twenty days of filing the answer. Rule 25(a), RLDE. The parties also must exchange documents and witness statements to be presented at the hearing. Rule 25(b)(1), RLDE. Where a party fails to timely disclose witness names or statements as required by the rules, the sub-panel or hearing officer may "grant a continuance of the hearing, preclude the party from calling the witness or introducing the document, or take such other action as may be appropriate." Rule 25(g), RLDE.

■ ODC did not object to respondent presenting witnesses in mitigation, despite the fact that he defaulted, failed to

cooperate in general, and failed to give sufficient prior notice of the witnesses. Maye's mitigating testimony regarding the ultimate outcome of the complainants' cases touched on more substantive matters than the usual mitigation testimony regarding the respondent's character and personal situation. Lack of harm, similar to lack of prejudice, may be considered as mitigating evidence in a disciplinary action. *In re McFarland,* 360 S.C. 101, 105, 600 S.E.2d 537, 539 (2004) (considering the lack of prejudice to the client's case as a mitigating factor). However, considering the surprise nature of the lack of harm evidence presented in this default case, it should have been considered in conjunction with rebuttal evidence showing actual harm. Despite the Commission's finding that it did not give much weight to the lack of harm evidence, we find the Commission abused its discretion in denying the continuance because it did not allow ODC the opportunity to obtain and present evidence to rebut the surprise lack of harm evidence.

We agree with the parties that a nine-month suspension, with participation in a law office management program and payment of costs, is the appropriate sanction for respondent. We caution the Commission in the future to carefully weigh the continuance decision when, as in the present case, the parties present surprise evidence without prior notice to the obvious disadvantage of the other party.

**DEFINITE SUSPENSION.**

TOAL, C.J., MOORE, WALLER, PLEICONES and BEATTY, JJ., concur.