725 S.E.2d 686

**In the Matter of Michael E. ATWATER, Respondent.**

**No. 27117.**

Supreme Court of South Carolina.

Heard Jan. 26, 2012.
Decided April 25, 2012.
Rehearing Denied May 24, 2012.

Lesley M. Coggiola, Disciplinary Counsel, and Barbara M. Seymour, Deputy Disciplinary Counsel, both of Columbia, for Office of Disciplinary Counsel.

Michael E. Atwater, of Rock Hill, pro se.

PER CURIAM.

After receiving a complaint from Edward Boulware that his case went nearly ten years without resolution, the Office of Disciplinary Counsel (ODC) conducted an investigation and filed formal charges against his attorney, Michael Atwater. Following a hearing, a Panel from the Commission on Lawyer Conduct found Atwater violated various Rules of Professional Conduct and recommended Atwater receive an admonition and pay the costs of the proceedings. ODC took exception to the Panel's report, arguing it should have found Atwater violated additional Rules of Professional Conduct. Additionally, ODC argues a sanction harsher than an admonition is warranted. We agree.

## FACTUAL/PROCEDURAL BACKGROUND

### I. BOULWARE MATTER

Shortly after a water main adjacent to Boulware's property ruptured in January 2000, Boulware retained Atwater to bring a suit against the City of Rock Hill. At their initial meeting and in the following months, Boulware provided Atwater with several documents related to this matter, including estimates of the damage, pictures of the flooding, Boulware's recent tax returns, and the City's letter rejecting Boulware's claim. With this information in hand, Atwater filed a complaint against the City in May 2000. In February 2001, the water main broke again and flooded Boulware's property a second time. Atwater accordingly filed an amended complaint reflecting this additional damage.

At this stage, it is undisputed that Atwater engaged in at least some discovery. For example, he responded to interrogatories and requests for production from opposing counsel, and he deposed and interviewed various witnesses. By the time the case was called for trial in June 2003, Atwater believed he had enough evidence to move forward and try the case. However, just as the case was called for trial, it was removed from the circuit court docket and set for binding arbitration. The matter was scheduled to be arbitrated in 2003, and Atwater met with Boulware to prepare an arbitration packet in anticipation of the proceeding.

This arbitration ultimately fell through. Atwater's work on the matter subsequently diminished precipitously, and he never resolved the case. Atwater's main contention as to why he was unable to proceed was a lack of evidence to support Boulware's claims. However, in the six and a half years after the case was to be arbitrated, Atwater interviewed at most only a handful of witnesses, took just a few depositions, and only visited the property three times. Rather than actively investigating Boulware's claims himself, Atwater instead primarily relied on Boulware to come forward with evidence on his own initiative.

As a prime example, Atwater's chief evidentiary concern was a lack of proof as to the damages Boulware incurred.[1] However, he never asked Boulware for copies of the cancelled checks he wrote for repairs to substantiate his claim of damages. It was not until opposing counsel requested them in 2005, five years after the flooding, that Atwater received them. Only then did Atwater ask Boulware for more information about his expenditures. Unfortunately, Boulware was unable to provide anything more specific to Atwater because so much time had passed since he wrote the checks; had Atwater told him to keep better records from the start, Boulware testified he would have done so. Furthermore, Atwater never had his own estimate of Boulware's damages performed despite his reservations about the estimate Boulware provided.[2]

Also during these six and a half years, the evidence before us shows Atwater sent only a few letters and e-mails, and made only a few telephone calls, to Boulware. Atwater testified, however, that he was routinely in contact with Boulware and many of his meetings also were in person. On the other hand, Boulware offered copies of his telephone records to

---

1. Boulware spent approximately $14,000 out of pocket to perform some repairs to the building. He testified further repairs were needed, but he could not afford them. Atwater's concern was that Boulware's damages estimate was inflated and that his actual expenses included payments for items other than flooding damage. He was also concerned that the estimate Boulware tendered was performed by an old friend of Boulware's, not an independent contractor.

2. Atwater claimed that Boulware would not let him get his own estimate. The Panel found this assertion "entirely lacking in credibility."

show the numerous calls he made to Atwater, the vast majority of which Boulware claims went unanswered or unreturned.[3] In fact, Boulware wrote multiple e-mails and letters to Atwater expressing his frustration in reaching his attorney and the slow progress of his case.[4]

Over the years, the settlement offers tendered by the City ranged from $15,000 to $22,000, with an assurance that the City could go up to $25,000 if necessary. Boulware rejected each of these, claiming he needed at least $30,000 to adequately cover the necessary repairs. Also during this time period, the matter was set to be arbitrated on at least three different occasions, each of which fell through.[5] Unsatisfied with Atwater's progress on his case after eight years, Boulware requested his file from Atwater in 2008. He made a second request a few months later and copied ODC in his letter. In the fall of 2009, when Atwater was suspended by this Court in another matter,[6] Boulware retained a different attorney to handle his case. He settled the case seven months later for $22,000, claiming this sum was now acceptable only because the age of the case had diminished its value. ODC subsequently filed formal charges against Atwater.

## II. PANEL REPORT

Based on the foregoing, the Panel concluded Atwater violated the following Rules of Professional Conduct, Rule 407,

---

3. These records were used only to show the telephone calls Boulware made to Atwater, not whether Atwater returned any telephone calls.

4. For example, Boulware wrote a letter to Atwater in 2005 expressing his desire to just get the matter behind him given how long it had taken to resolve. In 2007, he wrote, "Let's just proceed with what we have." By 2008, his frustration had grown: "I cannot phantom [sic] any civil case of this nature taking over eight years to reach settlement. I do not understand why I have been unable to obtain basic information concerning this matter, or why the case has not and is not being settled."

5. There is evidence to suggest Atwater was not at fault in these cancellations. However, Boulware testified Atwater failed to keep him fully apprised of them. Additionally, Atwater points to these cancellations as being a contributing factor for why Boulware's case took ten years to resolve.

6. *In re Atwater*, 385 S.C. 257, 262, 684 S.E.2d 557, 559–60 (2009) (*Atwater II* ).

SCACR: Rule 1.1 (competence); Rule 1.3 (diligence and promptness); and Rule 3.2 (duty to expedite litigation). However, the Panel found ODC had not set forth clear and convincing evidence that Atwater violated Rule 1.2 (scope of representation and allocation of authority), Rule 1.4 (communication), Rule 3.1 (meritorious claims and contentions), and 8.4(e) (conduct prejudicial to the administration of justice), RPC, Rule 407, SCACR.

In particular, the Panel found Atwater violated Rule 1.1 by exhibiting a lack of thoroughness and preparation. While the Panel did note that Atwater possesses the necessary legal skill and knowledge to practice law, it nevertheless found his lack of investigation and preparation constituted a violation of Rule 1.1.

As to Rules 1.3 and 3.2, the Panel similarly found that Atwater failed to diligently prosecute the claims he brought on Boulware's behalf. While the Panel agreed that some delays are inevitable and outside of an attorney's control, it was extremely concerned with Atwater's refusal to accept any responsibility for the numerous delays that caused a case "uncomplicated both factually and legally" to drag on for nearly ten years. As the Panel found, there was much Atwater could have done to advance the matter even if there were obstacles to his progress along the way. Although Atwater maintained he thoroughly investigated the case, the Panel found no evidence to support this contention and resolved this credibility issue in favor of Boulware.

With respect to Rules 1.2 and 1.4, the Panel noted there was a factual dispute as to the extent Atwater maintained contact with Boulware. In the end, the Panel found credible Atwater's testimony that he routinely discussed the case with Boulware in person and over the telephone. Atwater's "shortcoming," according to the Panel, was instead with "his failure to adequately document his client file to reflect those discussions and meetings." The Panel therefore found ODC failed to meet its burden in proving Atwater violated Rules 1.2 and 1.4.

As to Rule 3.1 regarding meritorious claims and contentions, the Panel summarily found ODC presented no evidence as to any violation of this rule. In a similarly summary fashion, the

Panel also concluded that Atwater's conduct did not violate Rule 8.4(e) and therefore was not prejudicial to the administration of justice.

In aggravation, the Panel considered Atwater's failure to acknowledge any wrongdoing, his prior disciplinary history, and his pattern of misconduct. First, as noted previously, Atwater failed to take any responsibility for the delays in prosecuting Boulware's case, instead laying the blame primarily on Boulware for not coming forward with evidence on his own and other individuals for cancelling the scheduled arbitrations.

With respect to Atwater's prior history, he has been sanctioned twice in the past for misconduct. In 2003, he received a public reprimand for violating Rules 1.1; 1.3; 1.4(b); 1.5(b)–(c) (fee agreements); 3.2; 3.3(a) (making false statements of material fact); 3.7 (lawyer acting as a witness at trial); 8.1 (making false statements of material fact in connection with disciplinary proceedings); 8.4(d) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation); and 8.4(e), RPC, Rule 407, SCACR. *In re Atwater,* 355 S.C. 620, 625–27, 586 S.E.2d 589, 592 (2003) (*Atwater I* ). Additionally, Atwater received a six-month definite suspension in 2009 for multiple violations of Rule 8.1(b), RPC, Rule 407, SCACR (failing to cooperate with ODC).[7] *Atwater II,* 385 S.C. at 262, 684 S.E.2d at 559–60.

Of particular concern to the Panel were Atwater's actions in *Atwater I.* In that case, among other things, Atwater failed to respond to the opposing party's motion for summary judgment. *Atwater I,* 355 S.C. at 623, 586 S.E.2d at 591. As a result, his client's claims were dismissed. *See id.* The Panel accordingly viewed his prior dilatory representation as demonstrating a pattern of misconduct. Furthermore, Atwater received this public reprimand in *Atwater I* during his represen-

---

7. In *Atwater II,* Atwater was charged with five complaints of misconduct. 385 S.C. at 258, 684 S.E.2d at 558. The Panel found he committed misconduct in three of the complaints but his conduct was not sanctionable. *Id.* The remaining two complaints were dismissed. *Id.* However, the Panel found Atwater failed to cooperate with ODC during its investigation of these complaints and this alone was sanctionable. *Id.* at 258–59, 684 S.E.2d at 558.

tation of Boulware, and more specifically, at the very time when he essentially ceased working on Boulware's case.

In mitigation, the Panel considered Atwater's lack of dishonest or selfish motive. The Panel found that Atwater did not personally benefit in any way from his misconduct as he took this case on contingency and received no fees for his work.

Ultimately, the Panel recommended that we give Atwater an admonition and order that he pay the costs of the proceedings.

## LAW/ANALYSIS

ODC takes exception to the Panel's report and requests that we find Atwater violated both Rules 1.4 and 8.4(e). In addition, ODC asks us to impose a more severe sanction than an admonition regardless of whether Atwater also violated Rules 1.4 and 8.4(e).

■ "The findings of the panel are entitled to great weight, particularly when the inferences drawn from the testimony in the record depend largely on the credibility of the witnesses." *In re Johnson*, 380 S.C. 76, 80, 668 S.E.2d 416, 418 (2008). In the end, however, we have the sole authority to discipline attorneys for misconduct. *In re Greene*, 371 S.C. 207, 216, 638 S.E.2d 677, 682 (2006). Thus, we are not bound by the Panel's findings and recommendations, and we make our own findings of fact and conclusions of law. *Id.* Furthermore, we are to impose the sanction we deem appropriate. *Id.* ODC bears the burden of proving any allegation of misconduct by clear and convincing evidence. *Id.*

Atwater has not filed a brief taking exception to the Panel's findings and recommendations, and he is therefore bound by them. *See* Rule 27(a), RLDE, Rule 413, SCACR. Furthermore, we concur in the Panel's findings that Atwater violated Rules 1.1, 1.3, and 3.2. ODC has not taken exception to the Panel's findings that Atwater did not violate Rules 1.2 and 3.1. We agree with the Panel that ODC presented no evidence Atwater violated Rule 3.1. However, we believe the Panel's

analysis of Rule 1.2 is subsumed within ODC's challenge to the Panel's findings regarding Rule 1.4 and discuss it below.[8]

## I. COMMUNICATION

▮ ODC contends the Panel erred in finding Atwater did not fail to adequately communicate with Boulware. Because the Panel based this holding on a finding that Atwater's testimony was credible, we defer to the Panel.

Rule 1.4(a) states, in pertinent part,

A lawyer shall

. . . .

(2) reasonably consult with the client about the means by which the client's objectives are to be accomplished;

(3) keep the client reasonably informed about the status of the matter; [and]

(4) promptly comply with reasonable requests for information.

Rule 1.2(a) similarly requires that "a lawyer shall abide by a client's decisions concerning the objectives of representation and, as required by Rule 1.4, shall consult with the client as to the means by which they are to be pursued."

In our opinion, ODC has set forth a colorable claim that Atwater violated these rules. Throughout the hearing, Boulware detailed his attempts to reach Atwater to discuss the case and his frequent inability to actually do so. Boulware bolstered his claims by providing phone records demonstrating his efforts to contact Atwater and various letters he wrote complaining of Atwater's failure to respond. Additionally, Boulware specifically instructed Atwater to proceed with the evidence he already had, which Atwater clearly did not do. In sum, these claims reveal a complete breakdown of communication between Boulware and Atwater, even with Boulware's instructions to proceed despite the perceived evidentiary deficiencies.

---

**8.** The Panel discussed Rules 1.2 and 1.4 in tandem, noting they impose similar ethical obligations. ODC, however, only challenges the Panel's conclusion with respect to Rule 1.4. Because these obligations are similar in this case, we will discuss them both under our de novo standard of review.

Atwater, on the other hand, maintained he was frequently in contact with Boulware either over the telephone or in person. The Panel agreed, finding his testimony credible and noting that Atwater's problem really was just a failure to adequately document these communications. While we are troubled by ODC's allegations and the lack of a documentary record supporting Atwater's contentions, we nevertheless give deference to the Panel's finding that Atwater's testimony was credible. Accordingly, we find ODC has not submitted clear and convincing evidence to show Atwater violated Rules 1.2 and 1.4. In the future, though, it would greatly behoove Atwater and other members of the Bar to adequately document their communications with clients to avoid similar problems.

## II. CONDUCT PREJUDICIAL TO THE ADMINISTRATION OF JUSTICE

ODC next argues the Panel erred in finding Atwater did not violate Rule 8.4(e), which prohibits engaging in conduct prejudicial to the administration of justice. We agree.

Our Rules of Professional Conduct do not provide any specific guidance as to what constitutes conduct prejudicial to the administration of justice. While our previous cases citing Rule 8.4(e) cover a wide range of conduct, they do include instances where an attorney has neglected a case he was hired to prosecute. *E.g., In re Brannon*, 383 S.C. 374, 377, 680 S.E.2d 776, 777 (2009); *In re Sims*, 380 S.C. 61, 64, 668 S.E.2d 408, 409 (2008); *In re Allen*, 366 S.C. 174, 177, 621 S.E.2d 356, 358 (2005); *In re Ruff*, 366 S.C. 1, 5, 620 S.E.2d 323, 326 (2005); *In re Rast*, 360 S.C. 96, 99, 600 S.E.2d 534, 536 (2004); *In re Starks*, 344 S.C. 29, 30–31, 542 S.E.2d 726, 727 (2001); *see also In re Johnson*, 329 S.C. 363, 366, 495 S.E.2d 777, 779 (1998) ("Respondent has neglected legal matters entrusted to him and has engaged in conduct which brings the legal profession into disrepute. His conduct has been prejudicial to the administration of justice and adversely reflects on his fitness to practice law.").

In this matter, the Panel, despite concluding Atwater did not violate Rule 8.4(e), found "there is no evidence to suggest any meaningful effort on [Atwater's] part to resolve

this case" after consenting to mediation in 2003. The Panel also concluded that "[i]t is difficult to imagine any circumstances in which such a matter would take nearly a decade to resolve." We completely agree and believe this finding is at odds with the Panel's summary conclusion that Atwater did not violate Rule 8.4(e). To use an oft-quoted phrase, justice delayed is justice denied. Although this saying is often invoked in the criminal context, it is no less applicable to civil cases. The evidence before us demonstrates that Boulware was unable to provide some of the evidence Atwater claimed was necessary for the case as a result of Atwater's dilatory practices. Moreover, the evidence Boulware could have procured may have increased his eventual recovery. Thus, the delays Atwater occasioned prejudiced Boulware's case and potentially reduced the damages to which he was entitled.

Furthermore, "[p]erhaps no professional shortcoming is more widely resented than procrastination." Rule 1.3 cmt. 3, RPC, Rule 407, SCACR. "Even when the client's interests are not affected in substance, however, unreasonable delay can cause a client needless anxiety and undermine confidence in the lawyer's trustworthiness." *Id.* Thus, even without prejudice and accepting that Boulware ultimately settled the case for the same amount Atwater could have, the amount of time Atwater spent on a relatively simple matter itself casts a shadow over the profession. Atwater even continued to delay the case despite Boulware's obvious frustration with Atwater's slow progress. It is also particularly disconcerting to us that Atwater claimed he was ready to proceed to trial in June 2003, while at the same time premising his defense now on a lack of evidence to support Boulware's claims.

In our opinion, this evidence readily demonstrates conduct prejudicial to the administration of justice. We therefore find ODC met its burden in proving Atwater violated Rule 8.4(e).

### III. SANCTION

In sum, we find there is clear and convincing evidence that Atwater violated the following Rules of Professional Conduct: Rule 1.1, Rule 1.3, Rule 3.2, and Rule 8.4(e). Accordingly, Atwater is subject to discipline under the following provisions of Rule 7, RLDE, Rule 413, SCACR: Rule 7(a)(1)

(violating the Rules of Professional Conduct) and Rule 7(a)(5) (engaging in conduct tending to pollute the administration of justice and bringing the profession into disrepute).

ODC takes exception to the Panel's recommendation that we give Atwater an admonition, and we agree based on the aggravating circumstances found by the Panel. In particular, we share the Panel's grave concern with respect to Atwater's failure to acknowledge any responsibility for the delays in Boulware's case. *See In re Hendricks*, 319 S.C. 465, 468, 462 S.E.2d 286, 287 (1995) (noting that failure to accept personal responsibility for conduct is an aggravating factor). Without a doubt, delays arise in litigation, and the fact that a case may take longer than initially expected is simply a reality all clients must face. In the case before us, unquestionably there were delays and setbacks beyond Atwater's control. Nevertheless, these do not account for failing to resolve a relatively simple case for nearly ten years. There were myriad other things Atwater could have done to advance Boulware's case despite any roadblocks he may have encountered. Alternatively, he could have withdrawn from the representation if the case became too problematic. In other words, he should have fished or cut bait.

Instead of doing so, Atwater sporadically worked on and investigated Boulware's claims, unnecessarily prolonging the case. Before this Court, just as he did before the Panel, Atwater refused to accept any responsibility for these delays, instead finding someone else to blame for the case's slow progress at almost every turn. Furthermore, Atwater feigned surprise at Boulware's complaint, claiming he never had any prior problems with Boulware despite Boulware's numerous communications expressing his concerns. In fact, Atwater callously told us Boulware's complaint to ODC was just Boulware taking his frustrations regarding the weaknesses of his case out on Atwater.[9] This inability to recognize that he bears at least some responsibility for failing to advance this case and

---

9. Atwater's one statement that he believes there was more he should have done and perhaps he should have withdrawn is utterly unconvincing. Immediately after he made this statement, he backtracked by pointing out Boulware did not receive a better result after retaining a new attorney and mentioning once again that Boulware was just aggravated because he had a weak case.

letting it languish for almost a decade is cause for great concern. We also find it spurious for Atwater to complain of a lack of evidence to support Boulware's case when Atwater himself never sought to fill these gaps.

Additionally, not only does Atwater have a prior disciplinary history, but that history reflects a pattern of similar misconduct. *See In re Sturkey,* 376 S.C. 286, 290, 657 S.E.2d 465, 467 (2008) (stating panel considered prior disciplinary history and pattern of misconduct in aggravation). As previously noted, Atwater received a public reprimand in 2003 for violating the rules regarding competence, diligence and promptness, expediting litigation, and conduct prejudicial to the administration of justice. *Atwater I,* 355 S.C. at 625–27, 586 S.E.2d at 592. These are the exact same rules he violated in this case. More troubling is the fact that he received this public reprimand during his representation of Boulware. Even more troubling is the fact that his work on Boulware's case began to dwindle right after he was sanctioned for doing just that in *Atwater I.*

In mitigation, we do agree with the Panel that Atwater's lack of personal gain and dishonest motive is a relevant mitigating factor. *See In re Larkin,* 336 S.C. 366, 371, 520 S.E.2d 804, 806 (1999). Nevertheless, while Atwater may not have been malintentioned, the delays occasioned by his actions potentially prevented the discovery of relevant evidence supporting Boulware's case. In our opinion, this prejudice to Boulware's case, coupled with Atwater's pattern of misconduct and inability to accept responsibility for his actions, warrants a sanction harsher than an admonition.

Under these facts, we find a six-month definite suspension is appropriate. *See Sims,* 380 S.C. at 64–65, 668 S.E.2d at 409–10 (imposing a ninety-day suspension for violating the rules regarding diligence and promptness, communication, expediting litigation, not responding to ODC, and engaging in conduct prejudicial to the administration of justice); *In re Sturkey,* 376 S.C. 286, 291, 657 S.E.2d 465, 467–68 (2008) (finding a nine-month suspension was warranted for failing to communicate with clients, comply with disciplinary proceedings, and pursue litigation); *In re Cabaniss,* 369 S.C. 216, 218, 632 S.E.2d 280, 281 (2006) (imposing a twelve-month suspension for violating

the rules regarding competence, diligence and expediting litigation, communication, responding to ODC investigation, and conduct prejudicial to the administration of justice); *In re Davis*, 352 S.C. 29, 31–32, 572 S.E.2d 285, 287 (2002) (finding a sixty-day suspension appropriate for not providing competent representation, failing to diligently and expeditiously pursue litigation, failing to communicate with client, and engaging in conduct prejudicial to the administration of justice); *In re Smith*, 337 S.C. 582, 586–87, 524 S.E.2d 616, 618 (1999) (ordering attorney be suspended for twelve months when his neglect of a client matter prejudiced client, he did not cooperate with ODC, and he had a prior disciplinary record); *cf. Hendricks*, 319 S.C. at 468, 462 S.E.2d at 287 ("We decline to accept the assertions of impairment as mitigation in view of the serious misconduct committed and in light of respondent's failure to accept personal responsibility for his conduct."). We also order Atwater pay the costs of these proceedings.

## CONCLUSION

We hold Atwater has violated Rules 1.1, 1.3, 3.2, and 8.4 of the Rules of Professional Conduct. Accordingly, Atwater is subject to discipline under Rules 7(a)(1) and 7(a)(5) of the Rules for Lawyer Disciplinary Enforcement. Based on the facts of this case and particularly in light of Atwater's prior history and failure to accept responsibility for his conduct, we order Atwater be definitely suspended for a period of six months and pay the costs of these proceedings. Within fifteen days of the filing of this opinion, Atwater shall file an affidavit demonstrating he has complied with the requirements of Rule 30, RLDE, Rule 413, SCACR.