# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

In the Matter of Timothy Eugene Moses, Respondent.

Appellate Case No. 2015-001255

---

Opinion No. 27626
Heard January 12, 2016 – Filed April 20, 2016

---

## DISBARRED

---

Assistant Disciplinary Counsel Julie K. Martino, of
Columbia, for Office of Disciplinary Counsel.

Peter D. Protopapas, of Rikard & Protopapas, L.L.C., of
Columbia; Alexander M. Sanders, Jr., of Charleston; and
Michael J. Virzi, of Columbia, all for Respondent.

---

**PER CURIAM:** This attorney disciplinary matter stems from allegations that
Respondent Timothy Eugene Moses stole thousands of dollars from his law firm
(the Firm) by improperly billing clients. Respondent, who admitted to the
misconduct after the Office of Disciplinary Counsel (ODC) filed formal charges,
appeared before a panel of the Commission on Lawyer Conduct (the Panel). The
Panel recommended Respondent be suspended from the practice of law for one
year.

Both Respondent and ODC raise exceptions to the Panel's recommendation:
Respondent argues his conduct justifies only a six-month suspension, while ODC
argues Respondent should be disbarred. As discussed below, we agree with ODC
that Respondent's conduct merits disbarment.

# I.

There is no dispute over the facts in this case.

Respondent worked for the Firm, both as a summer clerk while in law school and as an attorney following his graduation in 1994,[1] until he abruptly resigned in September 2011. The Firm became suspicious of Respondent when a client contacted the Firm and claimed to have received a bill for $500 from Respondent asking the client to pay Respondent directly, which was in contravention of the Firm's policies. Typically, clients paid the Firm, and the Firm then paid its lawyers a fixed salary, a percentage of profits, or a combination of both. When the chairman of the Firm's executive committee (the Chairman) confronted Respondent on October 5, 2011, about the billing abnormality, Respondent initially feigned ignorance. The next day, Respondent emailed the Chairman and admitted sending the bill, which he termed a "local" statement, in response to the client's request. Respondent said the fact that he may have accidentally deposited the check into his personal account "embarrassed and horrified" him, "caused [him] fits," and kept him up at night. After "discovering" that he had in fact deposited the check, Respondent immediately agreed to repay the $500, plus interest. He reiterated that he was "_extremely_ embarrassed and mortified" and "[could not] believe [he] made such an egregious error and [he was] just sick about it."[2]

About a week later, Respondent met with the Firm's executive committee to discuss his actions. He claimed the two local statements he mentioned to the Chairman were the only times he had billed clients directly and was adamant that those two occurrences were isolated mistakes. The Firm's executive committee, however, remained suspicious and hired a computer forensics expert to examine Respondent's laptop to ascertain whether there were other instances of improper billing.

---

[1] Respondent passed both the Georgia and South Carolina Bar Exams that year.

[2] Respondent also admitted to sending another client a local statement, in an attempt to ensure prompt payment, after discovering the client was upset with the result of the Firm's representation. Respondent said he indorsed the check sent by that client and turned it over to the Firm for deposit.

The forensic examination uncovered approximately $77,000 in improper invoices, dated from August 2009 through September 2011. The computer expert also testified there had been two attempts to "scrub," or completely erase, the computer's hard drive. The expert said those attempts were largely successful, as there was evidence of other invoices that could not be recovered.

After discovering the extent of Respondent's actions, the Chairman filed complaints against Respondent in Georgia and South Carolina.[3] After Respondent became aware he was being investigated, in March 2012, he retained counsel, finally admitted to the theft, and offered to repay the money he stole from the Firm.[4] ODC filed formal charges against Respondent on March 13, 2013, alleging violation of the following Rules of Professional Conduct, Rule 407, SCACR: Rule 1.15 (safekeeping property); Rule 4.1 (truthfulness in statements to others); Rule 8.4(b) (criminal act that reflects adversely on lawyer's honesty); Rule 8.4(d) (conduct involving dishonesty); and Rule 8.4(e) (conduct prejudicial to the administration of justice). ODC sought sanctions against Respondent pursuant to the following Rules for Lawyer Disciplinary Enforcement, Rule 413, SCACR: Rule 7(a)(1) (violation of the Rules of Professional Conduct); Rule 7(a)(5) (conduct tending to pollute the administration of justice, bring the legal profession into disrepute, or demonstrating an unfitness to practice law); and Rule 7(a)(6) (violation of the oath of office taken to practice law).

Respondent appeared before the Panel at a hearing held on October 24, 2013. The Panel issued its report (the Report) on June 9, 2015.[5]

---

[3] According to ODC, the Georgia disciplinary action is on hold pending resolution of the South Carolina disciplinary proceedings.

[4] By October 2013, Respondent had repaid the Firm $81,719.43, which covered the amount of the improper invoices, plus the cost of the computer forensics expert. Respondent said he repaid the full amount of the improper invoices even though he did not actually collect that entire amount from clients.

[5] ODC did not seek to have Respondent placed on interim suspension while awaiting this Court's decision.

## II.

Because Respondent admitted his misconduct, the hearing was mainly for the purpose of considering aggravating and mitigating factors and recommending a sanction.[6]

As aggravating factors, the Panel considered (1) Respondent's dishonest and selfish motive and (2) the fact he committed multiple offenses and engaged in a pattern of misconduct over two years. As mitigating factors, the Panel considered (1) Respondent's lack of a prior disciplinary record; (2) Respondent's admission of guilt and cooperation; (3) Respondent's remorse for his conduct, which the Panel found to be genuine; and (4) Respondent's good character and reputation. The Panel considered Respondent's repayment of the stolen money as neither aggravating nor mitigating as it was not timely, being made only at the advice of counsel after disciplinary proceedings had begun.

The Panel appeared to give great weight to the testimony of Respondent's character witnesses: John Bell, an attorney licensed in Georgia and South Carolina; Bob Young, former mayor of Augusta and Assistant Deputy Secretary of the Department of Housing and Urban Development; and Dan Sisson, former chairman of Leadership Georgia and Leadership South Carolina. The witnesses testified to Respondent's competency as a lawyer, his participation in numerous civic and charitable organizations, and his outstanding reputation in the community, both personally and professionally. They testified Respondent's deceptive conduct was out of character and Respondent was extremely remorseful for engaging in it. The witnesses indicated they did not expect Respondent to engage in similar misconduct in the future and they still had the utmost trust in him.

The Panel concluded that the mitigating factors in this case were "significant" and therefore disbarment was inappropriate. The Panel recommended Respondent be suspended from the practice of law for one year, ordered to pay the costs of the disciplinary proceedings, and required to complete the Legal Ethics and Practice Program Ethics School and "a personal financial management program."

---

[6] The Panel found Respondent violated all of the rules alleged by ODC: Rules 1.15, 4.1, 8.4(b), 8.4(d), and 8.4(e), RPC, Rule 407, SCACR; and Rules 7(a)(1), 7(a)(5), and 7(a)(6), RLDE, Rule 413, SCACR.

Both Respondent and ODC raise exceptions to the Report and take issue with the Report's recommendation that Respondent be suspended from the practice of law for one year.  Respondent argues a shorter suspension is appropriate, while ODC argues Respondent should be disbarred.

## III.

### A.

"'The authority to discipline attorneys and the manner in which the discipline is given rests entirely with this Court.'"  *In re White*, 391 S.C. 581, 587, 707 S.E.2d 411, 414 (2011) (quoting *In re Tullis*, 375 S.C. 190, 191, 652 S.E.2d 395, 395 (2007)).  This Court "may accept, reject, or modify in whole or in part the findings, conclusions[,] and recommendations of the Commission [on Lawyer Conduct]." Rule 27(e)(2), RLDE, Rule 413, SCACR.  "The 'central purpose of the disciplinary process is to protect the public from unscrupulous and indifferent lawyers.'"  *In re Brown*, 361 S.C. 347, 355, 605 S.E.2d 509, 513 (2004) (quoting *In re Hall*, 333 S.C. 247, 251, 509 S.E.2d 266, 268 (1998)).  "The primary purpose of disbarment or suspension is the removal of an unfit person from the profession for the protection of the courts and the public, not punishment of the offending attorney." *In re Brooks*, 324 S.C. 105, 108, 477 S.E.2d 98, 99 (1996) (citing *In re Fullwood*, 322 S.C. 1, 6, 471 S.E.2d 151, 154 (1996); *In re Kennedy*, 254 S.C. 463, 465, 176 S.E.2d 125, 126 (1970)).  In determining a sanction, this Court considers the punishments elicited by similar misconduct in the past.  *See, e.g.*, *In re Jenkins*, 346 S.C. 617, 620–21, 552 S.E.2d 734, 736–37 (2001) (citations omitted) (reviewing sanctions previously imposed by the Court "for somewhat similar misconduct").

### B.

Respondent relies heavily on the absence of client harm from his misconduct in arguing for a shorter suspension, noting he stole money from the Firm, not clients. Citing *In re Boyd*, 388 S.C. 516, 697 S.E.2d 603 (2010), *In re Sturkey*, 376 S.C. 286, 657 S.E.2d 465 (2008), and *In re McFarland*, 360 S.C. 101, 600 S.E.2d 537 (2004), Respondent argues the Panel should have considered the lack of client harm in its analysis.  *See Boyd*, 388 S.C. at 517–18, 697 S.E.2d at 604 ("While recognizing the seriousness of this misconduct, the Court is aware that respondent did not place any client funds at risk . . . .");  *Sturkey*, 376 S.C. at 293, 657 S.E.2d at 468 ("Lack of harm . . . may be considered as mitigating evidence in a disciplinary

action." (citation omitted)); *McFarland*, 360 S.C. at 105, 600 S.E.2d at 539 ("We hold that the lack of prejudice to Client's case mitigates, but does not excuse, Respondent's misconduct.").

Respondent also relies heavily on the Panel's finding of significant mitigating factors. Respondent argues that cases dealing with misconduct similar to his with far fewer mitigating factors resulted in suspensions of between six and nine months. Respondent cites *Boyd*, 388 S.C. 516, 697 S.E.2d 603 (suspending for six months a lawyer who collected $2,000 from clients he billed directly, instead of through his firm), *In re Gray*, 381 S.C. 406, 673 S.E.2d 442 (2009) (suspending for nine months a lawyer who, during a one-year period, overcharged clients more than $14,000 by submitting fraudulent time entries and travel reimbursement requests), and *In re Lee*, 370 S.C. 501, 636 S.E.2d 624 (2006) (suspending for 180 days a lawyer who overbilled a client approximately $10,000 over a nine-month period) for support. Respondent argues that, for the sake of consistency, he should receive a six-month suspension.

In contrast, ODC argues that because Respondent engaged in a pattern of theft and deceptive conduct over an extended period of time, disbarment is appropriate. For support, ODC cites *In re Baldwin*, 411 S.C. 75, 767 S.E.2d 192 (2014) (disbarring a lawyer who, in addition to pleading guilty to breach of trust with fraudulent intent for failing to forward approximately $4,000 in client fee payments earned over a two-year period to his law firm, converted to his personal use approximately $670 in costs and fees owed to a client) and *In re Curlin*, 349 S.C. 287, 562 S.E.2d 652 (2002) (disbarring a lawyer who, in addition to stealing over $70,000 in law firm and client money from a real estate trust account over a three-year period, routinely forged signatures and prepared fraudulent documents, including a quitclaim deed).

ODC also argues the Panel gave too much weight to mitigating factors. ODC argues Respondent's remorse should be given little weight because he only expressed it after ODC initiated disciplinary proceedings against him, instead of when he was initially confronted by the Firm. In fact, referencing Respondent's initial responses to the Chairman in which Respondent claimed he was emotionally distressed by the mere thought of having wrongly deposited a $500 check, ODC argues Respondent's contrition at the hearing was disingenuous, which suggests the Panel should not have considered it at all. Finally, ODC argues that the testimony

of Respondent's character witnesses does not mitigate Respondent's conduct because all the while Respondent was busy earning his sterling reputation, he was also busy stealing from the Firm.

## IV.

We agree with ODC that the Panel gave too much weight to Respondent's mitigating character evidence. We also find Respondent's situation to be distinguishable from the cases he cites for support.

In two of the cases Respondent cites, the attorney and ODC had entered into an agreement for discipline, and this Court merely imposed a sanction within the agreed-upon range. *See Boyd*, 388 S.C. at 516, 697 S.E.2d at 603 (imposing a six-month suspension when the parties agreed to "the imposition of an admonition, public reprimand, or a definite suspension not to exceed six [] months"); *Lee*, 370 S.C. at 502, 636 S.E.2d at 624 (imposing a 180-day suspension when the parties agreed to "a public reprimand or definite suspension not to exceed two [] years"). In another of the cases Respondent cites, we noted that "[n]either ODC nor [the attorney] complain[ed] about the recommended sanction." *Sturkey*, 376 S.C. at 291, 657 S.E.2d at 468.

In deciding a sanction in this case we find *Baldwin* most instructive. Between 2012 and 2013, Baldwin converted $4,000 in client fees to his personal use by (1) collecting fees from new clients of which his law firm was unaware because he did not create new case files and (2) forwarding to his law firm only a portion of the fees collected from existing clients and altering documents to make it appear as if the clients' fees were less than they actually were. *Baldwin*, 411 S.C. at 77, 767 S.E.2d at 193. We found Baldwin's conduct egregious enough to merit disbarment. *Id.* at 76, 767 S.E.2d at 193.

Like Baldwin, Respondent converted client fees that were owed to his law firm to his personal use and took great measures to conceal his theft. When confronted and given the opportunity to come clean, Respondent repeatedly and emphatically denied any wrongdoing. Respondent thereby engaged in a serious pattern of theft and dishonesty over an extended period of time. When compared to Baldwin's, Respondent's conduct is certainly egregious enough to merit disbarment. Indeed, Baldwin only stole $4,000 from his firm, while Respondent stole well over $70,000.

## V.

Given the severity of Respondent's misconduct, we conclude disbarment is the appropriate sanction. Respondent is hereby disbarred, effective retroactively to the date of filing of formal charges by ODC, March 13, 2013. Respondent is ordered to pay the costs of these proceedings within thirty (30) days of the date of this opinion. Within fifteen (15) days of the date of this opinion, Respondent shall file an affidavit with the Clerk of Court showing that he has complied with Rule 30, RLDE, Rule 413, SCACR, and shall also surrender his Certificate of Admission to the Practice of Law to the Clerk of Court.

**DISBARRED.**

**PLEICONES, C.J., BEATTY, KITTREDGE, HEARN, JJ., and Acting Justice James E. Moore, concur.**